**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 20-cv-5905 |
| v. | ) ) | Judge Steven C. Seeger Magistrate Judge M. David Weisman |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

**LOEB & LOEB LLP**
Adam Kelly
Doug Masters
Arthur Yuan
321 North Clark Street
Chicago, Illinois  60654
(312) 464-3100

Christopher G. Binns
(admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENTS ...................................................1

STATEMENT OF FACTS .................................................................................................3

    I.      PLAINTIFFS' BUSINESS, HOVERBOARD PRODUCTS, AND DESIGN PATENTS ..............................................................................3

    II.     DEFENDANTS' UNLAWFUL ACTIVITIES.........................................5

    III.    DEFENDANTS HAVE CAUSED AND WILL CONTINUE TO CAUSE PLAINTIFFS IRREPARABLE HARM ABSENT AN *EX PARTE* TRO.................................................................................................7

ARGUMENT .....................................................................................................................8

    I.      PLAINTIFFS HAVE SATISFIED GROUNDS FOR AN *EX PARTE* TRO.................................................................................................9

          A.      Plaintiffs Will Likely Succeed on the Merits of Design Patent Infringement.............................................................................10

          B.      Plaintiffs Have No Adequate Remedy at Law to Compensate for Defendants' Infringing Activities, and Has Suffered and Will Continue to Suffer Irreparable Harm in the Absence of a TRO ................11

          C.      The Balance of Equities Favors Granting Plaintiffs an *Ex Parte* TRO...........................................................................................13

          D.      An *Ex Parte* TRO Will Serve Public Interest ...........................15

    II.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ...............................16

          A.      An *Ex Parte* TRO Enjoining Defendants' Unlawful Conduct is Appropriate ...............................................................................16

          B.      Restraining Defendants' Assets to Prevent a Fraudulent Transfer is Appropriate..............................................................................17

          C.      Plaintiffs are Entitled to Expedited Discovery.........................188

    III.    A MINIMAL BOND SHOULD SECURE THE INJUNCTIVE RELIEF ....................................................................................................18

CONCLUSION..............................................................................................................189

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) .............................................................................10, 14

*Aevoe Corp. v. AE Tech Co., Ltd.*,
  No. 12-CV-0053, 2012 WL 760692 (D. Nev. Mar. 7, 2012) ...................................13

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
  256 F. App'x 707 (5th Cir. 2007) .........................................................................17

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013).............................................................................12

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015).........................................................................15, 16

*Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*,
  132 F.3d 701 (Fed. Cir. 1997).............................................................................11

*Bushnell, Inc. v. Brunton Co.*,
  673 F. Supp. 2d 1241 (D. Kan. 2009) ..................................................................13

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012).......................................................................9, 13, 15

*Christian Dior Couture, S.A. v. Lei Liu, et al.*,
  No. 15-CV-6324, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ..........9

*Cobraco Manufacturing Co. v. Valley View Specialties Co.*,
  No. 90-CV-0284, 1990 U.S. Dist. LEXIS 10958 (N.D. Ill. Jan. 19, 1990)............15

*Columbia Pictures Indus., Inc. v. Jasso*,
  927 F. Supp. 1075 (N.D. Ill. 1996) ........................................................................8

*Competitive Edge, Inc. v. Staples, Inc.*,
  763 F. Supp. 2d 997 (N.D. Ill 2010) ....................................................................11

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*,
  No. 13-CV-2167, 2013 U.S. Dist. LEXIS 47248 (N.D. Ill. Mar. 27, 2013)............14

*Deckers Outdoor Corporation v. The Partnerships, et al.*,
  No. 15-CV-3249 (N.D. Ill. April 4, 2015) (unpublished).......................................18

ii

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665, 672 (Fed. Cir. 2008) ...........................................................................11

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005)...................................................................................10

*Granny Goose Foods, Inc., v. Brotherhood of Teamsters*,
415 U.S. 423 (1974)......................................................................................................9

*Lorillard Tobacco Co v. Montrose Wholesale Candies*,
No. 03-CV-4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) .............................17

*Nat'l Presto Indus. Inc. v. Dazey Corp.*,
18 U.S.P.Q.2d 1113 (N.D. Ill. 1990) .......................................................................15

*Nike Inc. v. Fujian Bestwinn Industry Co., Ltd.*,
166 F. Supp. 3d 1177 (D. Nev. 2016) .............................................................13, 17

*Otter Prods. v. Anke Group Indus. Ltd.*,
13-CV-00029, 2013 WL 5910882 (D. Nev. Jan. 8, 2013).................................13, 14

*Park v. O-Sung & Co.*,
No. 97-CV-0924, 1997 U.S. Dist. LEXIS 10967 (N.D. Ill. July 23, 1997)............11

*PCT Int'l Inc. v. Holland Elecs. LLC*,
No. 12-CV-01797, 2015 WL 5210628 (D. Ariz. Sept. 8, 2015), *aff'd*, 2016 WL 4373941
(Fed. Cir. Aug. 16, 2016) ............................................................................................12

*Promatek Indus., Ltd. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002) .....................................................................................12

*Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) .....................................................................................12

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) .....................................................................................18

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)..................................................................................13

*Scholle Corp. v. Rapak LLC*,
35 F. Supp. 3d 1005 (N.D. Ill. 2014) ........................................................................17

*Tuf-Tite, Inc. v. Fed. Package Networks, Inc*.,
No. 14-CV-2060, 2014 U.S. Dist. LEXIS 163352 (N.D. Ill. 2014) ........................17

*Ty, Inc. v. The Jones Group, Inc.*,
237 F.3d 891 (7th Cir. 2001) ...........................................................................9, 10, 14

*Vance v. Rumsfeld,*
    No. 06-CV-06964, 2007 WL 4557812 (N.D. Ill Dec. 21, 2007)..............................................18

**Statutes**

28 U.S.C. § 1331 .................................................................................................................................9

28 U.S.C. § 1338 .................................................................................................................................9

28 U.S.C. § 1391 .................................................................................................................................9

35 U.S.C. § 1 ......................................................................................................................................9

35 U.S.C. § 271 ................................................................................................................................10

35 U.S.C. § 282 .....................................................................................................................2, 10, 14

35 U.S.C. § 283 ................................................................................................................................16

35 U.S.C. § 289 ..........................................................................................................................14, 17

**Other Authorities**

Fed. R. Civ. P. 26(b)(2) ....................................................................................................................18

Fed. R. Civ. P. 65(b) ..........................................................................................................................8

Fed. R. Civ. P. 65(c) ........................................................................................................................18

Fed. R. Civ. P. 65(d) ........................................................................................................................18

Plaintiffs Hangzhou Chic Intelligent Technology Co. ("Chic") and Unicorn Global, Inc. ("Unicorn") submit this Memorandum of Law in support of its *ex parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery against Defendants and third-party platforms.

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiffs are playing a virtual game of Whack-A-Mole. But unlike the arcade version of Whack-A-Mole where the player possesses one hammer to use against ten known moles for only 30 seconds, this virtual version includes foreign anonymous moles or Defendants who pop up with one identity to sell infringing products, and then after being whacked, will continuously reemerge as a different identity and continue their infringement until receiving another whack. The Plaintiffs cannot possibly possess enough hammers to stop this unfortunate cycle and ask this Court to turn off this game. Making matters worse, Defendants are now armed with a sophisticated "look-out" service to alert them of actions like this one, enabling them to perpetuate their infringement and continue inflicting irreparable harm to the Plaintiffs *prior* to a public TRO.

Plaintiff Chic owns U.S. Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), and D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit[1]"). Chic utilizes the Patents-in-Suit when designing, manufacturing, and selling its hoverboards under the SISIGAD and FLYING-ANT name brands ("Plaintiffs' Products"). Plaintiff Unicorn is the exclusive U.S. distributor of Plaintiffs' Products. Defendants are foreign-based or affiliated entities who operate fictitious online e-commerce stores ("Defendant Internet Stores") and sell unauthorized products that infringe the Patents-in-Suit ("Infringing Products").

---

[1] Once Plaintiffs are in physical possession of each of the Accused Products, a separate motion for a temporary restraining order directed to US Patent Nos. 10,696,347 ("the '347 patent") and 10,696,348 ("the '348 patent") may be submitted to this Court.

This Court should grant an *ex parte* TRO for several reasons. First, the Patents-in-Suit are presumed valid under 35 U.S.C. § 282, and as explained below, Plaintiffs have submitted substantial evidence to establish a *prima facie* case of design patent infringement and thus have demonstrated the requisite likelihood of success on the merits. Second, Defendants' infringing conduct is causing the Plaintiffs to suffer irreparable harm. Such conduct is eroding Plaintiffs' control of their patents rights, damaging their reputation and goodwill, diminishing their market share, and causing customer confusion. Simply put, monetary damages will be inadequate to compensate Plaintiffs for Defendants' infringement.

Third, the equities weigh in favor of Plaintiffs. Plaintiffs have invested millions of dollars to develop novel designs and secure design patent protection. Yet the Defendants are unlawfully taking advantage of that investment to Plaintiffs' detriment. By comparison, Defendants are entitled to little consideration as intentional infringers and whatever harm may befall upon them under an *ex parte* TRO would be the result of their own infringement. And an *ex parte* TRO will serve the public by furthering the long-held public policy of favoring the protection of patent rights. Plus, an *ex parte* TRO will provide incentive for other inventors and innovators to continue developing new products and technologies without fear of the inability to enforce their patents.

Fourth, the requested scope of *ex parte* relief is appropriate. Because Defendants operate anonymously with fictitious names in order to evade enforcement actions and will often transfer assets outside of this Court's reach, an order restraining Defendants' assets is warranted. Unless Defendants' assets are frozen, Plaintiffs will be unable to properly account for or receive a monetary award. Additionally, to further Plaintiffs' request for relief of a proper accounting, Plaintiffs should be awarded expedited discovery in order to ascertain Defendants' banking and

payment systems, for example. Absent expedited discovery, freezing Defendants' assets will do little to make Plaintiffs whole when enforcing their lawfully issued patents.

Accordingly, in order to turn off this virtual game of Whack-A-Mole, this Court should issue an *ex parte* TRO to enjoin Defendants from infringing the Patents-in-Suit and grant the additionally requested equitable relief.

## STATEMENT OF FACTS

I. **PLAINTIFFS' BUSINESS, HOVERBOARD PRODUCTS, AND DESIGN PATENTS**

Chic is a high-tech company that manufactures and licenses hoverboard products for sale in the United States. Chic is supported by Zhejiang University Ministry of Education Computer Aided Product Innovation Design Engineering Center, the Zhejiang University International Design, and Zhejiang Key Laboratory of Service Robot. *See* Declaration of Jaiwei Ying, dated September 29, 2020 ("Ying Declaration") ¶ 2. Chic is located in the Liangzhu University Science and Technology Park, Yuhang District, Hangzhou, China. *See id.* ¶ 3. Chic is ranked as a Top 100 Most Technologically Advanced Enterprises and a Top Ten Industrial Design Center in Zhejiang Province. *See id*. Chic-designed products are highly successful within the United States, and have been featured in Justin Bieber music videos and in NBA contests. *See id*. ¶ 4.

Chic has invested heavily in its hoverboard technology. Specifically, Chic has spent several million dollars in research and development of hoverboard products, *see id*. ¶ 4, and intellectual property protection is vital to protect that investment and ensure the success of Chic's business operations. Chic has been assigned approximately 400 granted patents for its various hoverboard technologies and designs in numerous countries and jurisdictions such as China, the United States, the European Union, and Canada. *See id*. ¶ 5.

3

The Patents-in-Suit are directed to functional and ornamental features of hoverboards. *See id.* ¶ 6. The 'D723 patent and the 'D256 patent are entitled "Self-Balancing Vehicle," and were issued on September 1, 2015 and September 8, 2015, respectively. *See id.* ¶¶ 7-8. The 'D195 patent and the 'D112 patent are entitled "Human-Machine Interaction Vehicle," and were issued on April 18, 2017 and April 25, 2017, respectively. *See id.* ¶¶ 9-10. Jiawei Ying is the named inventor of the Patents-in-Suit, and he has assigned all rights, title, and interest to the patents to Chic. *See id.* ¶ 6. Chic has licensed certain rights to the Patents-in-Suit to Unicorn, including the right to enforce. *See id.* ¶ 7-10. Plaintiffs utilize the Patents-in-Suit when designing, manufacturing, and selling Plaintiffs' Products. *See* Compl. ¶¶11-28.

The Patents-in-Suit have revolutioned hoverboard ornamental design that features a central support platform. *See* Ying Decl. ¶ 14. For example, the 'D723 patent and the 'D256 patent have defined the fundamental ornamental configurations of the hoverboard product class. *See id.* The 'D112 patent features a soft edge between the central support platform and the fenders, and the 'D195 patent features a sharper edge. Both designs have streamline shapes that appeal to United States customers. *See id.* The 'D112 patent features a soft edge between the central support platform and the fenders, while the 'D195 patent features a sharper edge. *See id.*

Chic's investment in the Patents-in-Suit, among its other patents, have made Chic a global leader in the hoverboard industry. Unicorn sells, through affiliates and licenses, various hoverboard models under the FLYING-ANT brand name, among others, which are licensed from Chic. *See* Lei Decl. ¶ 4. For example, Unicorn sold at least approximately 100,000 units on Amazon.com in 2019 for an average sales price of $110.00 per unit, generating approximately $11 million in 2019. *See id.* ¶ 7. Based on these figures, Plaintiffs have projected a 20% growth per year over the next two years. *See id.* Also Plaintiffs' Products have earned high reviews and

industry praise. For example, the FLYING-ANT Hoverboard, and the Hoverboard for Kids & Adults have maintained a 4.4 out of 5 review with at least 509 reviews at the time of this motion. *See id.* ¶ 4.

Although Plaintiffs' Products have been successful, that success has been substantially hindered by numerous other unauthorized sellers who have copied Plaintiffs' patented designs and features, including but not limited to the Defendants here.

## II.    DEFENDANTS' UNLAWFUL ACTIVITIES

Although the Defendants lack a license to the Patents-in-Suit, each are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products. *See* Ying Decl. ¶ 7-11 and Lei Decl. ¶ 14. Defendants offer to sell and/or sell the Infringing Products to residents of the United States, including Illinois residents, through Defendant Internet Stores. *See* Lei Decl. ¶ 13. Although Plaintiffs sold approximately 10,000 hoverboards in 2019, infringers such as Defendants sold a far greater number of units—units that unlawfully embodied Plaintiffs' patented designs and features. *See id.* ¶ 7. For example, in the first six months of 2020, infringers shipped more than 100,000 "hoverboard" or "self-balancing vehicle" units that embody Plaintiffs' patented designs and features, severely impacting Plaintiffs' growth projections. *See id.* ¶ 9. Defendants' unlawful conduct has effectively forced the Plaintiffs to compete against its own (unauthorized) patented designs.

Defendants actively conceal their identities and use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *See id.* ¶ 11. Defendants regularly create new online marketplace accounts on various platforms (*e.g.*, Amazon.com, eBay.com, Walmart.com, *etc.*) under unknown fictitious names and addresses. *See id.* ¶ 12. These tactics are commonly used by Defendants to conceal their identities and the full scope and interworking of their operation, so as to avoid being shut down. *See id.*

Despite operating under fictitious names, there are similarities among the Defendant Internet Stores. *See id.* Specifically, Defendant Internet Stores maintain similar accepted payment methods, check-out methods, metadata, illegitimate search engine optimization tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and similar hosting services. *See id.* ¶ 15.

To evade enforcement efforts Defendants will often register new online accounts under new seller aliases once they receive notice of a lawsuit. *See id.* ¶ 12. Infringers such as Defendants will also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *See id.* ¶ 8. They further operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways in order to continue operation in spite of enforcement efforts. *See id.* ¶ 16. Defendants often maintain offshore bank accounts and regularly transfer funds from their PayPal accounts (or other financial accounts) to off-shore bank accounts outside this Court's jurisdiction. *See id.*

In addition, the Defendants often engage a Chinese-based third-party "look-out" service provider called SellerDefense.cn, whose business objective is to reveal information to potential unauthorized sellers of intellectual property enforcement actions, asserted patents, and accused products. *See* Declaration of Arthur Tan-Chi Yuan, dated October 9, 2020 ("Yuan Decl."), ¶¶ 6-9. SellerDefense.cn will publish such information on its website in order to tip off the Defendants, alerting them to begin transferring assets outside this Court's jurisdiction. *See also* Exhibit 1 (Copy of a Google-powered English translation of Exhibit 2, showing a list of court filings that have published by SellerDefense.cn) and Exhibit 2 (The Chinese original publication). More importantly, SellerDefense.cn specifically chose the top level domain ".cn," to designate People's

Republic of China, for its web hosting, because such hosting services are outside the Court's jurisdiction and targeted primarily at Chinese readers.

SellerDefense.cn highlights how Defendants and their Chinese manufacturers evade enforcements and game the openness of the U.S. federal court system. Such a publication scheme is akin to a "look-out" who watches out for the authorities, while others are committing a criminal act, and then sounds an alarm when the authorities are present. In other words, SellerDefense.cn's publication is not a public service to its readers who respect patent rights. Instead, it is an alarm to its readers—unauthorized sellers of knock-offs and infringing products—to transfer assets outside the Court's jurisdiction.

## III. DEFENDANTS HAVE CAUSED AND WILL CONTINUE TO CAUSE PLAINTIFFS IRREPARABLE HARM ABSENT AN *EX PARTE* TRO

Because of the unique and imminent nature of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm without an injunction from this Court. Defendants' unlawful conduct prevents Plaintiffs from exercising control of its rights to patented designs and fully exploiting these designs and associated proprietary technologies. *See* Lei Decl. ¶¶ 17 and 19. Defendants' unlawful conduct has also damaged Plaintiffs reputation and goodwill. *See id*. Furthermore, Defendants' conduct has damaged Plaintiffs' consumer brand confidence, which can result in a loss of future sales and market share. *See id*.

Additionally, Defendants' unlawful conduct is causing a loss of pricing power, thereby diminishing Plaintiffs' investment in the Patents-in-Suit by forcing Unicorn to engage in a pricing war against infringers who are impermissibly utilizing Plaintiffs' patented designs and features in the Infringing Products. *See id.* ¶ 18. Defendants have flooded the marketplace with inferior products that tarnish Plaintiffs' goodwill and causes confusion amongst consumers, damaging consumer confidence in Plaintiffs' patented designs and features. *See id.* Defendants' inferior

products are manufactured with faulty parts that endanger consumers, exposing the entire hoverboard industry to the risk of collapsing due to safety issues. *See id.*

Monetary damages will not adequately compensate Plaintiffs for Defendants' infringement. *See id.* ¶ 17. It is difficult, if not impossible, to accurately calculate the damage caused by Defendants' conduct, because Plaintiffs have lost control over its rights in patented designs, experienced a diminished reputation and goodwill, loss pricing power, diminished market share, and Plaintiffs inability to exploit its patented designs. *See id.* The extent of harm to Plaintiffs' reputation and goodwill and possible diversion of customers, because of a loss in brand confidence, is unquantifiable. *See id.* ¶ 18. Such loss of quality control and the damage cause to Plaintiffs' reputation is neither calculable nor precisely compensable.

Accordingly, Plaintiffs have suffered irreparable harm and will continue to do so absent a TRO from this Court enjoining Defendants from further unlawful conduct.

## **ARGUMENT**

This Court is empowered to issue an *ex parte* TRO where immediate and irreparable injury, loss, or damages will result to the movant before the adverse party may be heard in opposition. *See* Fed. R. Civ. P. 65(b). Here, Plaintiffs have pled sufficient facts and presented evidence through declarations to show that Defendants' infringing conduct is causing and will continue to cause irreparable harm to Plaintiffs and thus an *ex parte* TRO is warranted.

Absent the requested sealed TRO, Defendants will likely register new e-commerce stores under new aliases, and move any assets to off-shore bank accounts outside the jurisdiction of this Court, *see* Lei Decl. ¶ 12, trapping Plaintiffs in a virtual Whack-A-Mole game. Courts have recognized that civil actions against foreign, online infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in

infringing merchandise are often useless if notice is given to the infringers"). An *ex parte* order preserves the *status quo* and prevents irreparable harm. *See Granny Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

An *ex parte* TRO is appropriate where, like here, the necessary subject matter and personal jurisdiction requirements are satisfied. This Court has original subject matter jurisdiction over the claims in this action under the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391. And this Court may exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Illinois, through Defendant Internet Stores. Specifically, Defendants are soliciting Illinois residents by operating one or more e-commerce stores through which Illinois residents can purchase products featuring the Patents-in-Suit. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, No. 15-CV-6324, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (finding personal jurisdiction was proper over defendant offering to sell alleged infringing product to United States residents, including Illinois, despite no actual sale); and Yuan Decl.") ¶¶ 3-5. Further the Defendants are committing tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Plaintiffs substantial injury in this state.

## I.     PLAINTIFFS HAVE SATISFIED GROUNDS FOR AN *EX PARTE* TRO

To obtain a temporary restraining order Plaintiffs must demonstrate (1) a likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926 (Fed. Cir. 2012). Once these three conditions are satisfied, this Court should then consider the harm that the Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the Plaintiffs will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. Finally, the Court

should consider the potential effect on the public interest (non-parties) in denying or granting the TRO. *Id.* Weighing all of these factors and "sitting as would a chancellor in equity," this Court should decide whether to grant the TRO. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)).

### A.     Plaintiffs Will Likely Succeed on the Merits of Design Patent Infringement

Plaintiffs are likely to succeed on the merits of their patent infringement claim. To establish a likelihood of success on the merits of its patent infringement claims, Plaintiffs "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271. To determine whether a violation of § 271 has occurred, this Court should (1) "construe the asserted claim[s]" and then (2) "determine whether the accused product [] contains each limitation of the properly construed claims, either literally or by a substantial equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005). All issued U.S. patents are afforded a statutory presumption of validity including the Patents-in-Suit. *See* 35 U.S.C. § 182. Taken collectively, Plaintiffs have sufficiently satisfied these requirements.

Chic is the lawful owner of the Patents-in-Suit and Unicorn is the lawful assignee. *See* Ying Decl. ¶ 7-10; Lei Decl. ¶ 3. Plaintiffs have pled sufficient facts and submitted extensive evidence through declaration that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that directly and/or indirectly infringe the ornamental designs as well as the features embodied in the Patents-in-Suit. *See* Compl. ¶ 2, Schedule A, Exhibit 1; *see also* Yuan Decl. Exhibit 8 (which provides a comparison chart

comparing the accused products to the design patents). For design patents among the Patents-in-Suit, the evidentiary record shows that an ordinary observer would be deceived into thinking that the Infringing Products would the same as Plaintiffs' Products. Ying Decl. ¶ 17 (explaining that Defendants' unlawful conduct "will continue to cause consumer confusion, which weakens [Plaintiffs'] brand recognition and reputation"); *see also Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). Yet, Defendants possess no license to the Patents-in-Suit and are not authorized retailers of Plaintiffs' Products. Accordingly, Plaintiffs have established a *prima facie* case of design patent infringement for the Patents-in-Suit, and thus have demonstrated a likelihood of success on the merits.

### B. Plaintiffs Have No Adequate Remedy at Law to Compensate for Defendants' Infringing Activities, and Has Suffered and Will Continue to Suffer Irreparable Harm in the Absence of a TRO

Plaintiffs have no adequate remedy at law and will continue to be irreparably harmed absent a TRO. Because the Plaintiffs possess valid patents and have established patent infringement, this Court may presume irreparable harm. *See Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."). "Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Park v. O-Sung & Co.*, No. 97-CV-0924, 1997 U.S. Dist. LEXIS 10967, at *11-12 (N.D. Ill. July 23, 1997).

Even beyond the presumption, Plaintiffs have presented overwhelming evidence of irreparable harm through declaration. Plaintiffs have suffered and will continue to suffer the loss of their exclusive patent rights, loss of market share that Plaintiffs may never be able to recover, immeasurable damage to Plaintiffs' goodwill and reputation as the creator and authorized provider

of the Plaintiffs' Products. *See* Lei Decl. ¶¶ 17-19. It is difficult, if not impossible, to accurately calculate damages from Plaintiffs' loss control over its design patent rights, loss of pricing power, diminished market share, and inability to exploit their patented designs. *See id.* The harm to Plaintiffs' reputation and goodwill and possible diversion of customers, due to a loss in brand confidence, is unquantifiable. *See id.* Such collective harms are irreparable. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (holding that damage to goodwill was irreparable harm for which no adequate remedy at law exists); *see also Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

A causal nexus exists between Defendants' infringement and the irreparable harm Plaintiffs are suffering. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Defendants' infringing use of Plaintiffs' patented designs and features in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See, e.g.,* Lei Decl. ¶ 9 (explaining that within the first six months of 2020, Defendants have sold 40% more hoverboard units than Plaintiffs sold in the entirety of 2019); *see also PCT Int'l Inc. v. Holland Elecs. LLC*, No. 12-CV-01797, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple" with a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

A monetary judgment will be difficult, if not impossible, to collect here because Defendants are primarily Chinese entities who hide their true identities and lack a U.S. presence. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (holding that

collection of monetary damages would be difficult because defendants were foreign corporations). In similar cases involving foreign infringers other district courts have found that money damages were insufficient. *See, e.g., Aevoe Corp. v. AE Tech Co., Ltd*., No. 12-CV-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods. v. Anke Group Indus. Ltd.*, 13-CV-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("[B]ecause Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co*., 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); and *Nike Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F. Supp. 3d, 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn.").

Because Plaintiffs are afforded a presumption of irreparable harm, have presented substantial evidence of the same, and face substantial difficulties of recovering any monetary judgment from these foreign Defendants, an *ex parte* TRO is appropriate. *See Celsis*, 664 F.3d at 930 (holding that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" constitute irreparable harm).

### C.     The Balance of Equities Favors Granting Plaintiffs an *Ex Parte* TRO

The Plaintiffs have demonstrated (1) a *prima facie* case of design patent infringement, (2) irreparable harm, and (3) a causal nexus between the Defendants' infringement and Plaintiffs' irreparable harm.  Now this Court should weigh the equitable considerations of the parties' competing interests.  *See Ty, Inc.*, 237 F.3d at 895; and *Abbott Labs*, 971 F.2d at 6, 11.  When

weighing the equities, this Court should apply "a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13-CV-2167, 2013 U.S. Dist. LEXIS 47248, at *22 (N.D. Ill. Mar. 27, 2013) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1082 (7th Cir. 2008)). When properly weighed, the equities heavily favor entering a TRO.

Beginning with the Plaintiffs, the Patents-in-Suit are valid and infringed, *see supra*, Section I(A), and the Plaintiffs will likely succeed on the merits of design patent infringement. *See* 35. U.S.C. §§ 282 and 289. Plaintiffs also have suffered and will continue to suffer irreparable harm, *see supra*, Section I(B), and are unlikely able to recover monetary damages by virtue of Defendants' status as foreign entities, primarily in China. *See Otter Prods.*, 2013 WL 5910882, at *2 (holding that plaintiffs would suffer irreparable injury through the loss of control of intellectual property rights, loss of consumer goodwill, and ability to exploit trademark and design patents). Absent a TRO, Plaintiffs will be unable to justify the substantial investment in developing the technologies embodied in the Patents-in-Suit, and will continued to experience the Defendants taking advantage of such investments to Plaintiffs' detriment. Therefore, before even assessing the Defendants' equities, if there are any, the sliding scale heavily favors Plaintiffs.

But the Defendants possess scant equity in their favor, because as intentional infringers, this Court should afford little equitable consideration due to any harm caused by a TRO. Such harm would be self-inflicted. Defendants knowingly chose to walk an infringing path and courts have refused to assign "harm" to defendants who assume such a risk. *See Celsis*, 664 F.3d at 931 ("[T]he preliminary record suggests that [the defendant's] losses were the result of its own

calculated risk in selling a product with knowledge of [the plaintiff's] patent."). Such conduct is likely willful under the patent law, thus triggering enhanced damages under 35 U.S.C. § 284. *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) (explaining the standard for establishing willful patent infringement)

Accordingly, the equities heavily favor Plaintiffs.

**D.    An *Ex Parte* TRO Will Serve Public Interest**

This Court should also consider the public interest, which when considered here, the public interest will be served by an *ex parte* TRO. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015). Public policy favors protection of rights secured by valid patents. *See Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90-CV-0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc.*, 809 F. 3d at 647.

Issuing an *ex parte* TRO will provide incentives for inventors and innovators to continue to develop new technologies and patenting inventions without fear of the inability to enforce the patents and stop infringers. Additionally, the public will not be harmed, as there are other hoverboard products on the market that do not infringe the Patents-in-Suit, *e.g.*, Plaintiffs' Products. *See Nat'l Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (ruling that if an injunction makes the defendant's products unavailable, the public has other products to purchase, including the plaintiff's products); *see also Apple Inc.*, 809 F.3d at 647 ("This is not a case where the public would be deprived of Samsung's products. Apple does not seek to enjoin the sale of lifesaving drugs, but to prevent Samsung from profiting from the unauthorized use of infringing features in its cellphones and tablets."). To be sure, there is little public interest

15

in allowing foreign infringers to knowingly continue to sell infringing products to U.S. consumers through third-party platforms such as Amazon and eBay.

Accordingly, the public interest heavily favors granting an *ex parte* TRO.

## II. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. This Court has the power to not only stop the foreign Defendants' infringing activities, but also award additional reasonable relief to ensure their compliance with this Court.

### A. An *Ex Parte* TRO Enjoining Defendants' Unlawful Conduct is Appropriate

When considering the current global economy, where infringers can operate anonymously over the internet, Plaintiffs' request for an *ex parte* TRO is appropriate. Plaintiffs have submitted substantial evidence that Defendants are making, using, offering for sale, selling, and importing Infringing Products into the United States. *See* Lei Decl. ¶ 13, Compl. ¶ 2, Schedule A, Exhibit 1. Thus, enjoining Defendants from further unlawful conduct is warranted. Such relief is necessary to stop the ongoing harm to Plaintiffs' control over their rights to Plaintiffs' patented designs and features, harm to its reputation and goodwill, and the harm to unknowing U.S. consumers who purchase the Infringing Products—ones that fail to meet the quality standards associated with Plaintiffs' Products. An *ex parte* TRO is warranted because Plaintiffs are unaware of the true identities or accurate locations of the Defendants, as well as other Defendant Internet Stores selling Infringing Products. Courts have repeatedly authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Tuf-Tite, Inc. v. Fed. Package Networks, Inc*., No. 14-CV-2060, 2014 U.S. Dist. LEXIS 163352, at *29 (N.D. Ill. 2014); *Scholle Corp. v. Rapak LLC*, 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014); and *Nike, Inc*., 166 F. Supp. 3d at 1178-79.

16

**B.    Restraining Defendants' Assets to Prevent a Fraudulent Transfer is Appropriate**

This Court has the inherent equitable authority to issue prejudgment asset restraints.  *See Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007).  Here, an *ex parte* restraint of Defendants' assets is needed to ensure an equitable accounting of Defendants' profits and sales of Infringing Products.  As stated previously, Defendants use anonymous seller aliases to evade detection, and upon notice of this lawsuit, will transfer assets to financial institutions outside of this Court's jurisdiction.  *See* Lei Decl. ¶ 11.  And Defendants will hold most of their assets outside of the United States making it easy to hide or dispose of assets.  Plus the Defendants will likely be notified by third-party "look out" services, such as SellerDefendse.cn, if their names are publicly known.  An *ex parte* restraint should account for these circumstances and ensure Defendants' compliance.

Plaintiffs are also entitled to recover "the extent of [Defendants'] total profit."  *See* 35 U.S.C. § 289.  In order to ascertain such profits Plaintiffs seek an accounting and payment from Defendants of all profits realized by Defendants from Defendants' unlawful conduct.  *See* Compl. ¶ 77.  This Court has awarded that same relief and froze assets to preserve the potential profits.  *See Lorillard Tobacco Co v. Montrose Wholesale Candies*, No. 03-CV-4844, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) (holding that because plaintiffs requested relief was equitable—disgorgement of profits—the court froze defendant's assets).  In addition, Defendants' unlawful conduct likely subjects them to enhanced damages under 35 U.S.C. § 284.

Unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten gains to offshore bank accounts.  Accordingly, a reasonable asset restraint to facilitate a proper accounting and monetary award from Defendants is warranted.

17

### C.    Plaintiffs are Entitled to Expedited Discovery

Expedited discovery is necessary to discover Defendants' banking and payment system accounts. Defendants may be using third-party payment processors such as PayPal to maintain anonymity by interposing a third-party between the unknowing U.S. consumer and Defendants. Courts have broad power to permit discovery in order to reveal the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2) and 65(d)(2)(C); *see also Vance v. Rumsfeld*, No. 06-CV-06964, 2007 WL 4557812, at *6 (N.D. Ill Dec. 21, 2007) ("[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."). The expedited discovery requested here is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts is necessary to both freeze the accounts and to ensure compliance with this Court. But without the requested expedited discovery, an asset restraint and seizure will have little effect. Accordingly, expedited discovery is warranted.

### III.    A MINIMAL BOND SHOULD SECURE THE INJUNCTIVE RELIEF

A total amount of bond of no more than ten thousand dollars ($10,000) is sufficient to support the issuance of an *ex parte* TRO. Requiring a security upon issuance of a TRO is within the sound discretion of this Court. *See* Fed. R. Civ. P. 65(c); *see also Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Plaintiffs have submitted substantial evidence demonstrating Defendants' blatant infringement and thus a minimal bond is sufficient. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-CV-3249 (N.D. Ill. April 4, 2015) (unpublished) (establishing $10,000 bond for a TRO enjoining foreign infringers).

### <u>CONCLUSION</u>

The Plaintiffs have pled sufficient facts and provided substantial evidence through declaration to demonstrate the necessary requirements for this Court to grant the requested *ex parte*

TRO.  Absent such collective relief, Defendants will continue infringing the Patents-in-Suit and causing irreparable harm to Plaintiffs, in contravention of the public's interest in enforcing valid design patents.  Accordingly, this Court should enter an *ex parte* TRO and shut off the Defendants' virtual game of Whack-A-Mole.

Date:   October 9, 2020                      Respectfully Submitted,

                                            LOEB & LOEB LLP

                    By:      /s/ *Adam Kelly*

                            Adam Kelly
                            Doug Masters
                            Arthur Yuan
                            321 North Clark Street, Suite 2300
                            Chicago, Illinois  60654
                            Tel.: (312) 464-3100
                            Fax: (312) 464-3111
                            Email:  akelly@loeb.com
                            Email:  dmasters@loeb.com
                            Email:  ayuan@loeb.com


                            Christopher Binns (admitted *pro hac vice*)
                            LOEB & LOEB LLP
                            345 Park Avenue
                            New York, New York 10154
                            Tel.:  (212) 407-4000
                            Fax:  (212) 407-4990
                            Email:  cbinns@loeb.com

                            *Attorneys for Plaintiffs*