HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. AND UNICORN GLOBAL INC.,** <br><br> **Plaintiffs** <br><br> **v.** <br><br> **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A** <br><br> **Defendants.** | **Case No. :20-cv-05905** <br><br><br> **Judge Steven C. Seeger** <br><br> **Magistrate Judge M. David Weisman** <br><br><br> **Filed Under Seal** |

**EXPERT DECLARATION OF PAUL HATCH REGARDING**

**INFRINGEMENT OF U.S. PATENTS D737,723, D738,256, D784,195, and D785,112**

1

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

# CONTENTS

I.  INTRODUCTION ................................................................................................................. 3

    A.  Summary of Opinions ................................................................................................. 3

    B.  Background and Qualifications ................................................................................... 3

    C.  Compensation and Prior Testimony ........................................................................... 4

    D.  Materials and Information Considered ........................................................................ 4

    E.  Methodology Used in Preparing this Declaration ...................................................... 5

II.  LEGAL STANDARDS ........................................................................................................ 5

    A.  Legal Principles in Analysis of Design Patent Infringement ..................................... 5

    B.  Claim Construction in Design Patents ........................................................................ 6

    C.  The Significance of Prior Art ..................................................................................... 7

    D.  Functionality and Design Patents .............................................................................. 7

    E.  Definition of a Designer of Ordinary Skill in the Art ................................................ 8

    F.  Definition of the Ordinary Observer .......................................................................... 8

III.  ANALYSIS OF THE PATENTS, CLAIMED DESIGNS AND THE PRIOR ART ............. 9

    A.  Examination of the Patents-In-Suit ............................................................................ 9

    B.  Examination of the '723 Patent .................................................................................. 9

    C.  Examination of the '256 Patent ................................................................................ 12

    D.  Examination of the '195 Patent ................................................................................ 15

    E.  Examination of the '112 Patent ................................................................................ 17

    F.  Analysis of the Patents' Cited Prior Art .................................................................. 18

    G.  Analysis of Functionality ........................................................................................ 20

IV.  OVERVIEW OF THE ACCUSED PRODUCTS ............................................................... 21

V.  THE ACCUSED PRODUCTS INFRINGE THE PATENTS-IN-SUIT ............................. 23

    A.  Comparison of the '723 Patent to the Accused Products ......................................... 24

    B.  Comparison of the '256 Patent to the Accused Products ......................................... 25

    C.  Comparison of the '195 Patent to Species II of the Accused Products .................... 27

    D.  Comparison of the '112 Patent to Species III of the Accused Products ................... 29

VI.  CONCLUSION .................................................................................................................. 30

VII.  RESERVATION OF RIGHTS ........................................................................................... 30

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

## I.     INTRODUCTION

I have been retained by counsel as an independent expert witness to provide my opinion regarding the above litigation matter, and matters related to the U.S. Patents D737,723, D738,256, D784,195, and D785,112 ("the Patents-In-Suit") attached as Exhibit 1. This declaration is in support of Plaintiffs Hangzhou Chic Intelligent Technology Co. and Unicorn Global Inc.'s (collectively "Hangzhou") motion for a preliminary injunction.

Hangzhou requested that I opine on the similarities between the design claimed in the Patents-In-Suit and various hoverboard products (details of which are attached as Exhibit 2) (collectively, the "Accused Products").

I understand my task is to review materials and offer my opinion, perspective and insights regarding this subject. I hold the opinions expressed in this declaration, but as my study of the case continues, I may acquire additional information that leads to new insights relevant to these opinions. With that in mind, I reserve the right to supplement this declaration if and when such additional information becomes known to me. I may also provide supplemental and rebuttal declarations in response to arguments which may be proposed by the Defendant.

### A.     Summary of Opinions

I have considered the appearance of the Claimed Designs and the Accused Products from the viewpoint of the ordinary observer who is familiar with the relevant prior art.

Having performed this analysis and evaluation, it is my opinion that the overall appearance of each of the Accused Products is not "plainly dissimilar" to one or more of the Claimed Designs of the Patents-In-Issue, as I understand that term to be understood in Patent Law.

I also conclude that an ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, would find the overall appearance of each Accused Product to be substantially the same as the overall appearance of one or more of the Claimed Designs in light of the prior art, inducing him or her to purchase each Accused Product supposing it to be the Claimed Design.

### B.     Background and Qualifications

I am the recently retired CEO of TEAMS Design USA, a global product design consultancy. I have over 25 years of product design and industrial design experience and have designed many mass-produced products, including consumer electronics, personal mobility equipment such as Segways, and electric bicycles. In my company, I was actively involved in all phases of the development process, including the user research, idea conceptualization, styling, visual brand language, development, engineering and overseeing the final production stages.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

I reside at 718 S. Oakley Blvd, Chicago, Illinois. I hold a Bachelor of Arts degree with honors (BA (Hons)) in Design for Industry (Industrial Design) from the University of Northumbria at Newcastle, United Kingdom. While studying to obtain my honors degree in Industrial Design, I took courses covering subjects including technical drawing, computer aided drawing, product styling and brand language, ergonomics, product evaluation, usability testing, production techniques, prototyping, mechanical engineering, and production techniques.

In the course of my work as a designer and managing teams of designers, I have gained an understanding of the training, knowledge, skills, and abilities of a person skilled in the art of product design and industrial design. Through this work, I have also gained an understanding of how a person who purchases a particular product perceives and appreciates the visual appearance and or functional merits of a product's design, and I use this understanding to opine on how the particular purchaser or ordinary observer would answer questions raised in the examination of design patents, utility patents, trademarks, and trade dress claims.

I am the named inventor in over 45 design and utility patents. I have written papers and spoken at many universities across the U.S. on the subject of visual perception, where I share information from psychological and neurological studies into how humans perceive things such as physical products, what physical attributes we notice (if any), and how meaning is attached to what we see.

I was recently nominated into the prestigious IDSA Academy of Fellows. I have also been awarded many design awards, including the "Design of the Decade Award" from Business Week. In 2016 I was elected onto the board of IDSA as Director-at-Large. Further information on my professional experience is detailed in my curriculum vitae, which is set forth in *Appendix A*.

I have previously provided expert testimony in many other patent-related matters, a detailed list of cases for which I have provided expert testimony is attached as *Appendix B*.

### C.     Compensation and Prior Testimony

I am being compensated at a rate of $450 per hour to provide analysis and testimony in this proceeding. My compensation is not contingent on the outcome of any matter or the specifics of my testimony. I have no financial interest in the outcome of this matter.

### D.     Materials and Information Considered

In forming my opinions, I have reviewed the claimed design of the Patents-In-Suit; their file history; the prior art cited on the face of the patent; and the Accused Products. The list of materials I reviewed in my analysis is included in *Appendix C*.

4

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

### E.    Methodology Used in Preparing this Declaration

I examined the above-mentioned products, patents and supporting documents. I also examined samples of the Commercial Embodiments. I applied my extensive research and expertise in industrial design and visual perception in preparing this Declaration.

My methodology used to prepare this declaration is presented as follows:

    a.  I will introduce the Patents-In-Suit, identify the scope of the Patents-In-Suit, and identify distinct ornamental features regarding the same.

    b.  I will introduce the prior art cited on the face of the Patents-In-Suit.

    c.  I will introduce the Accused Products and identify commonalities between them. I will compare the similarities and differences between each of the claimed designs of the Patents-In-Suit and the Accused Products, and explain how an ordinary observer would perceive the Claimed Designs and Accused Products in light of the prior art.

## II.    LEGAL STANDARDS

I am not a lawyer. Rather, I am an industrial designer and base my analysis on the legal guidelines provided to me as outlined below.

### A.    Legal Principles in Analysis of Design Patent Infringement

It is my understanding that "[w]hether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997) (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)).

I understand that, under precedent from the U.S. Court of Appeals for the Federal Circuit ("the Federal Circuit"), "trial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases[.]" *Egyptian Goddess*, 543 F.3d at 679. "[T]he court has recognized that design patents 'typically are claimed as shown in drawings,' and that claim construction 'is adapted accordingly.'" *Id*. (quoting *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)). Given the "difficulties entailed in trying to describe a design in words, the preferable course . . . [is] not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679.

As I understand, after a design patent's claim is construed, the claim "must be compared to the accused design to determine whether there has been infringement." *Elmer*, 67 F.3d at 1577. I understand that infringement occurs when an ordinary observer "giving such attention as a purchaser usually gives, [deems] two designs are substantially the same" meaning "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.[]" *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1872)).

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

I am also aware that infringement is determined "in light of the prior art" by "applying the ordinary observer test through the eyes of an observer familiar with the prior art." *Egyptian Goddess*, 543 F.3d at 677. Thus, the hypothetical ordinary observer is presumed to have a complete knowledge of all relevant prior art.

I understand that a design patent infringement analysis is a two-step process. The first step is to consider whether the Claimed Design and Accused Products are "sufficiently distinct" also known as "plainly dissimilar." *Ethicon*, 796 F.3d at 1335 (citing *Egyptian Goddess*, 543 F. 3d at 678). If the Claimed Design and the Accused Products are found to be plainly dissimilar, there is no patent infringement. *Id*.

But, "if the claimed and accused designs are not plainly dissimilar," I understand that the second step in an infringement analysis involves a three-way comparison to compare "the patented and accused designs in the context of similar designs found in the prior art." *Egyptian Goddess*, 543 F.3d at 674. "[I]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Id*. at 677.

As I understand, these "[d]ifferences, however, must be evaluated in the context of the Claimed Design as a whole, and not in the context of separate elements in isolation. Where, as here, the Claimed Design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon*, 796 F.3d at 1335 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). *See also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-1304 (Fed. Cir. 2010). "[T]he mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Co. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009).

### B.    Claim Construction in Design Patents

As I understand, courts construe claims for a design patent just as for a utility patent. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998). That said, I understand that the Federal Circuit has cautioned against a detailed, verbal construction of the features in the patent drawings. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc). This is because a written claim construction focused on individual features may lead the factfinder away from "consideration of the design as a whole." *Crocs*, 598 F.3d at 1303.

To construe the scope of a design patent, I understand that one must consider (1) the language of the specification to determine whether the written description disclaims, characterizes, or limits any features; (2) whether the figures identify unclaimed subject matter (e.g., features depicted in broken lines); and (3) whether the prosecution history of the application shows if

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

the applicant disclaimed subject matter or distinguished the Claimed Design from the prior art based on certain features present or absent in the graphics. *See Goodyear Tire*, 162 F.3d at 1116.

### C. The Significance of Prior Art

As I understand, the role of prior art is to help the finder of fact consider seemingly small or minor details that differentiate the patented design from the prior art. "Where there are many examples of similar prior art designs . . ., differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678.

For the purposes of my opinion, I considered prior art to define the scope of the hoverboard market at the time the Claimed Designs were filed. In so doing, I was able to better discern the similarities and differences (or lack thereof) between the Claimed Designs and the Accused Products in the eyes of the ordinary observer.

### D. Functionality and Design Patents

As was explained to me, to be afforded patent protection, "a design must present an aesthetically pleasing appearance that is not dictated by function alone." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 148 (1989). "[W]hether a design is primarily functional or primarily ornamental requires viewing the claimed design 'in its entirety.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329 (Fed. Cir. 2015). To determine the scope of the claim, I understand that the court considers the distinction between features of the claimed design that are "ornamental" and those that are "purely functional." *Ethicon Endo-Surgery*, 796 F.3d at 1333.

I understand that the scope of the claim is "limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Id*. I understand that a design element is "purely functional" where its basic design is "dictated" by its functional purpose or is otherwise "essential to the use of the article." *Sport Dimension, Inc. v. Coleman Co*., 820 F.3d 1316, 1320 (Fed. Cir. 2016).

I understand that several factors suggest that a feature is functional, including whether (1) the protected design represents the best design, (2) alternative designs would adversely affect the utility of the specified article, (3) there are any concomitant utility patents, (4) the advertising touts particular features of the design as having specific utility, and (5) whether the feature is clearly dictated by function. *PHG Technologies, LLC v. St. John Cos*., 469 F.3d 1361, 1366 (Fed. Cir. 2002). Although the *PHG Technologies* factors were discussed in the context of design patent validity, I understand that these factors are also a useful guide for determining functionality in claim construction as well. *Sport Dimension, Inc. v. The Coleman Company, Inc*., 820 F.3d 1316, 1321 (Fed. Cir. 2016).

Even where certain features of a device are deemed "functional," I understand that those features are not precluded from having protectable ornamentation in the context of the design as a whole. *Sport Dimension*, 820 F.3d at 1321; *see also Junker v. Med. Components, Inc.*, Civ. A. No. 13-4606, 2017 WL 4922291, at *5 (E.D. Pa. Oct. 31, 2017). Even where certain features of an article of manufacture serve a functional or utilitarian purpose, "the Federal Circuit has reiterated that district courts must still consider whether certain ornamental aspects of otherwise functional elements contribute to a design's overall ornamentation."  I further understand that to "entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose" is not permitted.  *Sport Dimension*, 820 F.3d at 1321. Accordingly, aspects of a design at claim construction should not lightly be extracted when the ultimate inquiry is focused on the overall design. *Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*, No. 17-2666-JAR-GEB (D. Kan. Jan. 17, 2020); *Graphic Packaging Int'l, LLC v. Inline Packaging, LLC*, No. 15-cv-03476, 2019 WL 4786148, at *4 (D. Minn. Oct. 1, 2019)

### E.  Definition of a Designer of Ordinary Skill in the Art

For purposes of this opinion, one of ordinary skill in the art as of the earliest priority date (June 13, 2014) is an Industrial Designer with a degree in Industrial Design or Product Design or related, with approximately two (2) years of professional design experience, including experience in consumer product design. Alternatively, a designer without a degree may be an ordinary designer if they have approximately two (2) to four (4) years of experience designing electronic devices, such as the ones at issue in this case.

### F.  Definition of the Ordinary Observer

I understand that the hypothetical ordinary observer must be identified before applying the ordinary observer test by focusing on the actual product that is presented for purchase, and the ordinary purchaser of that product.  The hypothetical ordinary observer is different for each case, based on the type of product at issue. As explained above, the determination of the substantial similarity is based on the viewpoint of the ordinary observer who is "not an expert in the claimed designs" but rather one of *ordinary* acuteness who is a principal purchaser of the product.  The hypothetical ordinary observer is also one who is aware of the great number of closely similar prior art designs and conversant with the prior art.

I also understand, "[t]he measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design[.]" *Goodyear Tire*, 162 F.3d at 1117.

Further, I understand that some courts have held that the ordinary observer is one who is "not an expert in the claimed designs" but rather "one of ordinary acuteness who is a principal purchaser[]" of the product. *Ethicon*, 796 F.3d at 1337 (internal quotations and citation omitted). That said, the ordinary observer is one who is "aware of the great number of closely

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

similar prior art designs" and "conversant with the prior art". *Egyptian Goddess*, 543 F.3d at 676, 678.

Under *Gorham*, the ordinary observer is through the "eyes of men generally" and not individuals "versed in designs in the particular trade in question" or "engaged in the manufacture or sale of articles containing such designs". *Gorham Co. v. White*, 81 U.S. 511, 527-528 (1871).

Based on my experience as an Industrial Designer of commercial products, including electronic mobility products and consumer electronics, it is my opinion that an ordinary observer in this case is the typical purchaser of hoverboards, i.e., a consumer user or the parent of a user, each having little or no experience purchasing hoverboards. The ordinary observer encounters products like the Claimed Designs online stores, on television and entertainment media, and in social media, and purchases them on online stores or from 'brick and mortar' stores like Best Buy or Walmart.

## III.    ANALYSIS OF THE PATENTS, CLAIMED DESIGNS AND THE PRIOR ART

### A.    Examination of the Patents-In-Suit

The four Patents-In-Suit are the U.S. Patents D737,723 ("the '723 Patent"), D738,256 ("the '256 Patent"), D784,195 ("the '195 Patent"), and D785,112 ("the '112 Patent") for Self-Balancing Vehicles, and Human-Machine Interaction Vehicles.  Such self-balancing vehicles are commonly referred to as "hoverboards".

As mentioned above, the scope of the claim of a patented design encompasses its visual appearance as a whole, and in particular the visual impression it creates to the ordinary observer.

### B.    Examination of the '723 Patent

The '723 Patent is titled "Self-Balancing Vehicle" and has a filing date of Dec 15, 2014. It claims priority to a foreign application CN 201430180556.4 dated 6/13/2014.

The patent has 8 figures, and states "the broken line showing is for the purpose of illustrating portions of the self-balancing vehicle and environment structure which form no part of the claimed design".

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| Table 1: The Claimed Design of the '723 Patent | |
| --- | --- |
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design |  FIG.1 |
| Fig.2 is a bottom plan view thereof | FIG.2 |
| Fig 3 is a rear elevational view thereof | FIG.3 |
| Fig. 4 is a front elevation view thereof | FIG.4 |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| | |
|---|---|
| Fig 5. Is a left side view thereof, the right side view being a mirror image thereof. | |
| Fig.6 is a rear, top, right perspective view thereof | |
| Fig. 7 is a front, top, left perspective view thereof | |



FIG.6

FIG.7

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| | |
|---|---|
| Fig 8 is a rear, bottom, left perspective view thereof | <br>FIG.8 |

What is claimed is the overall ornamental design of a Self-Balancing Vehicle as described in the patent and shown in the figures. The claimed design does not include the areas shown in broken lines, such as the wheels, holes on the underside, the "O I" pattern, and the on/off graphics.

I have reviewed the prosecution history of the '723 Patent, and it consistent with my opinion of the claim scope. The claimed design was allowed over all the prior art that was cited in the file history.

### C.    Examination of the '256 Patent

The '256 Patent is also titled "Self Balancing Vehicle" and has a filing date of Dec 15, 2014. The patent has 8 figures, and states "the broken line showing is for the purpose of illustrating portions of the self-balancing vehicle and environment structure which form no part of the claimed design".

| Table 2: The Claimed Design of the '256 Patent | |
|---|---|
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design | <br>FIG.1 |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



| | |
|---|---|
| Fig.2 is a bottom plan view thereof | FIG.2 |
| Fig 3 is a rear elevational view thereof | FIG.3 |
| Fig. 4 is a front elevation view thereof | FIG.4 |
| Fig 5. Is a left side view thereof, the right side view being a mirror image thereof | |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| Fig.6 is a rear, top, right perspective view thereof |  |
| Fig. 7 is a front, top, left perspective view thereof | |
| Fig 8 is a rear, bottom, left perspective view thereof | |

FIG.6

FIG.7

FIG.8

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

What is claimed is the overall ornamental design of a Self-Balancing Vehicle as described in the patent and shown in the figures. The claimed design does not include the areas shown in broken lines, such as the wheels, holes on the underside, and the "O I" pattern.

I have reviewed the prosecution history of the '256 Patent, and it consistent with my opinion of the claim scope. The claimed design was allowed over all the prior art that was cited in the file history.

### D.    Examination of the '195 Patent

The '195 Patent is titled "Human-Machine Interaction Vehicle" and has a filing date of Feb 29, 2016. It claims priority to a foreign application 201530389352.6 dated 10/9/2015

The patent has 6 figures, and states "the broken lines are for the purpose of illustrating portions of the human-machine interaction vehicle and environmental structure which form no part of the claimed design".

| Table 3: The Claimed Design of the '195 Patent | |
|---|---|
| Fig. 1 is a top plan view of a human-machine interaction vehicle showing my new design |  |
| Fig. 2 is a bottom plan view thereof | |

FIG.1

FIG.2

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



| | |
|---|---|
| Fig. 3 is a front elevational view thereof | FIG.3 |
| Fig. 4 is a rear elevational view thereof | FIG.4 |
| Fig. 5 is a right side view thereof, the left side view being a mirror image thereof | |
| Fig. 6 is a top, rear, right perspective view thereof | FIG.6 |

What is claimed is the overall ornamental design of a Human-Machine Interaction Vehicle as described in the patent and shown in the figures. The claimed design does not include the areas shown in broken lines, such as the wheels, and various patterns and lines on the top surfaces.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

I have reviewed the prosecution history of the '195 Patent, and it consistent with my opinion of the claim scope. The claimed design was allowed over all the prior art that was cited in the file history.

### E. Examination of the '112 Patent

The '112 Patent is also titled "Human-Machine Interaction Vehicle" and has a filing date of Feb 29, 2016. It claims priority to a foreign application CN 201530481979.4 dated 11/26/2015.

The patent has 6 figures, and states "the broken lines are for the purpose of illustrating portions of the human-machine interaction vehicle and environmental structure which form no part of the claimed design".

| Table 4: The Claimed Design of the '112 Patent | |
|---|---|
| Fig. 1 is a top plan view of a human-machine interaction vehicle showing my new design |  FIG.1 |
| Fig. 2 is a bottom plan view thereof | FIG.2 |
| Fig. 3 is a front elevational view thereof | FIG.3 |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



| Fig. 4 is a rear elevational view thereof | FIG.4 |
| Fig. 5 is a right side view thereof, the left side view being a mirror image thereof | |
| Fig. 6 is a top, rear, left perspective view thereof | FIG.6 |

What is claimed is the overall ornamental design of a Human-Machine Interaction Vehicle as described in the patent and shown in the figures. The claimed design does not include the areas shown in broken lines, such as the wheels, circular holes on the bottom surface, and various patterns and lines on the top surfaces.

I have reviewed the prosecution history of the '112 Patent, and it consistent with my opinion of the claim scope. The claimed design was allowed over all the prior art that was cited in the file history.

F.      Analysis of the Patents' Cited Prior Art

The prior art is used to compare to the claimed design of the patent to find the scope of the design in the ordinary observer test. It is also used to compare the accused product to the

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

claimed designs to evaluate if the accused product is closer to the claimed design than the prior art.

I have analyzed all the cited prior art of the Patents-In-Suit. Below I present one selected view from each of the cited prior art to provide an overview of the state-of-the-art at the time of the filing of each patent. As can be seen in the table below, each of the Patents-In-Suit differed highly from the prior art that preceded them.

| Table 5: The Cited Prior Art From the Face of the '723 and '256 Patents | | |
|---|---|---|
| US 8,118,319 | US 8,469,376 | US 8,414,000 |
| Appl. 2007-0273118 | US 8,500,145 | US D647,991 |

| Table 6: The Cited Prior Art From the Face of the '195 Patent | | |
|---|---|---|
| US 6,834,867 | US 7,424,927 | US 8,738,278 |
| US 9,403,573 | US D737,723 | US D738,256 |
| US 9,376,155 | US D739,906 | |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



Table 7: A Selection of the Cited Prior Art from the '112 Patent

US 7,481,291 — US 7,635,037 — US 8,738,278

US 9,403,573 — US 9,499,228 — US 9,682,732

US D601,922 — US D737,723 — US D738,256

US 9,376,155 — US D535,714 — US D739,906

### G.    Analysis of Functionality

I understand the defendant may express belief that the Patents-In-Suit include primarily functional elements, or that the claimed designs are dictated by function, and as a result construction of the design patent claims should exclude functional aspects. As I discussed more fully above, I understand that to "entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose" is not permitted. Accordingly, aspects of a design at claim construction should not lightly be extracted when the ultimate inquiry is focused on the overall design.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

I further understand that several factors suggest that a feature is primarily functional, including whether:

(1) the protected design represents the best design,
(2) alternative designs would adversely affect the utility of the specified article,
(3) there are any concomitant utility patents,
(4) the advertising touts particular features of the design as having specific utility, and
(5) whether the feature is clearly dictated by function.

In applying these standards, it is my opinion that none of the ornamental designs claimed in the Patents-In-Suit are dictated by function, or otherwise purely functional.

## IV.    OVERVIEW OF THE ACCUSED PRODUCTS

Although there is a high number of Accused Products, they fall into one of five common characteristics. Viewing these together as groups or 'species' we are better able to see the commonalities between items within a species, and compare them to the Patents-In-Suit.  The Accused Products in each 'species' below are not exact duplicates of each other but share very similar traits in their format, proportions and certain features, and share the same overall impression to an Ordinary Observer.



| Table 8: Accused Products of Species I | | |
|---|---|---|
| Jacol-5928 | Babyee | YlZmo0 |
| BESHGB | WangQingYu | XTSP |

The Accused Products of Species I have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated, angular light panels on the front surface.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



The Accused Products of Species II have an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface. The flat areas on either side of the top surface curve towards the center. The window for the lights is very wide and stretches horizontally across much of the front surface.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



| D.G.I. | Hypermicrosystems | |
|---|---|---|

The Accused Products of Species III have an integrated, stretched 'hourglass' body with many flowing, curved lines across the body and a relatively flat surface across the top, curvy, arched covers over the wheel area, larger radii on the front and back of the underside. The top surface of the main body appears to stretch across the full width of main body.



| Table 11: Accused Products of Species IV | | |
|---|---|---|
| CXMScooter | | |

The Accused Product of Species IV have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, generally arched covers over the wheel area, a tapered front and back surface, and elongated, angular light panels on the front surface.

## V.    THE ACCUSED PRODUCTS INFRINGE THE PATENTS-IN-SUIT

I conducted a side-by-side comparison of the Accused Products and the Claimed Designs. My analysis was limited to the Claimed Designs as depicted by the solid lines in the figures of the Patents-In-Suit and did not include the unclaimed portions of the design depicted in broken lines.

The Accused Products and the claimed designs of the Patents-In-Suit are both conceptually and functionally identical in that they are all Hoverboards, for recreational use by consumers.

As mentioned above, the scope of the claim of a patented design encompasses its visual appearance as a whole, and in particular the 'visual impression' it creates.  Even if various ornamental elements which make up the whole of a design may be slightly different in isolation, infringement occurs if the overall visual impression is substantially similar.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

In my analysis detailed below I conclude that the Accused Products are not plainly dissimilar to the Patented Designs and are substantially the same as the claimed designs of the Patents-In-Suit in the eyes of the ordinary observer. As an additional step, I also analyzed the patents' cited prior art against the Accused Products and Patented Designs to find whether the Accused Designs are closer to the Patented Designs than the cited prior art, as shown below.

### A.     Comparison of the '723 Patent to the Accused Products

While the below tables compare the Claimed Designs to just three representatives of each species, my analysis was undertaken on each of the accused products individually, based upon the entirety of the prior art reference materials.



Table 13: Comparison of the Claimed Design of the '723 Patent to each Species of the Accused Products

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



Giving due consideration to the legal standards as outlined in Section II, the examination illustrated in the table above allows for no other reasonable conclusion than that the overall visual impression of the Claimed Design of the '723 Patent and the Accused Products of Species I are not plainly dissimilar.

In the eyes of the ordinary observer, the claimed design of the '723 is substantially the same as the overall visual impression presented by Species I, II, III, and IV. Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '723 Patent and the Accused Products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface. The elongated window for the lights uses more angular, and dynamic lines.

In the eyes of the ordinary observer, the claimed design of the '723 is substantially the same as the visual impression presented by Species I, II, III, and IV. Also, the Accused Products in Species I-IV are closer to the claimed design of the '723 Patent than to the cited prior art of the '723 Patent.

**B.    Comparison of the '256 Patent to the Accused Products**

While the below tables compare the Claimed Designs to just three representatives of each species, my analysis was undertaken on each of the accused products individually, based upon the entirety of the prior art reference materials.

**Table 14: Comparison of the Claimed Design of the '256 Patent to each Species of the Accused Products**

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| | | | |
|---|---|---|---|
| **SPECIES IV** | CXMScooter  | | |

Giving due consideration to the legal standards as outlined in Section II, the examination illustrated in the table above allows for no other conclusion than that the overall visual impression of the Claimed Design of the '256 Patent and the Accused Products of Species I shown above are not plainly dissimilar.

In the eyes of the ordinary observer, the claimed design of the '256 is substantially the same as the overall visual impression presented by Species I, II, III, and IV. Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '256 Patent and the Accused Products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated, angled light panels on the front surface.

In the eyes of the ordinary observer, the claimed design of the '256 is substantially the same as the visual impression presented by Species I, II, III and IV. Also, the Accused Products in Species I-IV are closer to the claimed design of the '256 Patent than to the cited prior art of the '256 Patent.

### C. Comparison of the '195 Patent to Species II of the Accused Products

While the below tables compare the Claimed Designs to three representatives of Species II, my analysis was undertaken on each of the accused products individually, based upon the entirety of the prior art reference materials.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



**Table 15: Comparison of the Claimed Design of the '195 Patent to Species II of the Accused Products**

FIG.6

FIG.1

FIG.4

lasvegaslasers

Gyroshoes

Thousands of Electronics

Giving due consideration to the legal standards as outlined in Section II, the examination illustrated in the table above allows for no other conclusion than that the visual impression of the claimed design of the '195 Patent and the Accused Products of Species II shown above are not plainly dissimilar.

Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '195 Patent and the Accused Products share an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface. The flat areas on either side of the top surface curve towards the center. The window for the lights is very wide and stretches horizontally across much of the front surface.

In the eyes of the ordinary observer, the claimed design of the '195 is also substantially the same as the visual impression presented by Species II. Also, the Accused Products in Species II are closer to the claimed design of the '195 Patent than to the cited prior art of the '195 Patent.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

### D. Comparison of the '112 Patent to Species III of the Accused Products

While the below tables compare the Claimed Designs to Designs to three representatives of Species III, my analysis was undertaken on each of the accused products individually, based upon the entirety of the prior art reference materials.



Table 16: Comparison of the Claimed Design of the '112 Patent to Species III of the Accused Products

FIG.6

FIG.1

FIG.4

Hyper Microsystems

Julislatter1

Capitolcash4you /big-bag.retailshop / ab_convenient

Giving due consideration to the legal standards as outlined in Section II, the examination illustrated in the table above allows for no other conclusion than that the visual impression of the claimed design of the '112 Patent and the Accused Products of Species III shown above are not plainly dissimilar.

Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '112 Patent and the Accused Products share an integrated, stretched 'hourglass' body with many flowing, curved lines across the body and a relatively flat surface across the top, curvy, arched covers over the wheel area, larger radii on the front and back of the underside. The top surface of the main body stretches across the full width of main body, rising slightly upward in the center.

In the eyes of the ordinary observer, the claimed design of the '112 is also substantially the same as the visual impression presented by Species III. Also, the Accused Products in Species III are closer to the claimed design of the '112 Patent than to the cited prior art of the '112 Patent.

## VI.   CONCLUSION

Based upon the application of the legal principles described in this declaration, and upon my examination, analysis and comparisons of the Patents-In-Suit, their file histories, the prior art, the Commercial Embodiments and the Accused Products, it is my opinion that an ordinary observer would find the Accused Products to be substantially similar to the Claimed Designs.

    a. The Accused Products' overall design and visual impression is substantially the same as the Claimed Designs, with only minor and inconsequential differences observable upon even close inspection.

    b. The Accused Products appear substantially the same as the Claimed Designs of the Patents-In-Suit in the eye of an ordinary observer who is familiar with the prior art.

    c. The Accused Products of Species I are not plainly dissimilar to the claimed design of the '723 Patent.

    d. The Accused Products of Species I, II, III, and IV are substantially the same as the claimed design of the '723 Patent in the eyes of the ordinary observer.

    e. The Accused Products of Species I are not plainly dissimilar to the claimed design of the '256 Patent.

    f. The Accused Products of Species I, II, III, and IV are substantially the same as the claimed design of the '256 Patent in the eyes of the ordinary observer.

    g. The Accused Products of Species II are not plainly dissimilar to the claimed design of the '195 Patent. They are also substantially the same as the claimed design of the '195 Patent in the eyes of the ordinary observer.

    h. The Accused Products of Species III are not plainly dissimilar to the claimed design of the '112 Patent. They are also substantially the same as the claimed design of the '112 Patent in the eyes of the ordinary observer.

## VII.   RESERVATION OF RIGHTS

My current opinions are set forth in this declaration. However, my analysis is continuing, and I thus reserve the right to supplement or amend my declaration and to rely on additional documents, prior art, or discovery or testimony that may come to my attention.

Moreover, I may make additions, deletions, or modifications to this declaration and my opinions in the future that would be reflected in my testimony at the trial and/or additional declarations that I may be asked to submit in this case. I also reserve the right to rely on all other expert declarations submitted in this case. For the forthcoming trial, I may prepare diagrams, charts, other demonstratives, and/or demonstrations that illustrate the issues presented. I reserve the right to respond to additional arguments or analyses proffered by

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

expert witnesses and/or the Plaintiff, and I understand that I may be asked to give rebuttal testimony on matters not covered in this expert declaration.

I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.


Dated: November 30, 2020                         Respectfully Submitted,


                                                 _____

                                                 Paul Hatch