IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., ) ) ) ) | |
| Plaintiffs, ) | Case No. 20-cv-5905 |
| ) | |
| v. ) | Judge Steven C. Seeger |
| ) | Magistrate Judge M. David Weisman |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, ) ) ) ) | |
| Defendants. ) ) | |

**REBUTTAL EXPERT DECLARATION OF PAUL HATCH**

I. **EXECUTIVE SUMMARY**

Based upon the legal principles explained to me and my examination of the Zhang Affidavit, Defendant's product ASIN No. B08HW9TTBG ("the Accused Product"), the Patents-In-Suit and their file histories, the U.S. Patent D808,857 ("the 'D857 patent"), it is my opinion that:

- The Zhang Affidavit fails to disclose information typically associated with a qualified expert opinion witness for U.S. Design Patents (Section III. A).

- Mr. Zhang's analysis of the 'D857 patent is irrelevant to the infringement analysis (Section III. B).

- The Zhang Affidavit fails to expressly construe the scope of the Patents-In-Suit (Section III. C).

1

- The Zhang Affidavit incorrectly relies upon small, isolated differences in specific views and not the overall impression (Section III. D).

- The Zhang Affidavit incorrectly relies on the wrong ordinary observer (Section III. E).

- The overall appearance of the Accused Product is not "plainly dissimilar" to one or more of the claimed designs of the Patents-In-Issue.

- An ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, would find the overall appearance of the Accused Product to be substantially the same as the overall appearance of one or more of the Claimed Designs in light of the prior art, inducing him or her to purchase each Accused Product supposing it to be the Claimed Design.

## II. SCOPE OF OPINIONS

I have been retained by counsel as an independent expert witness to provide my opinion regarding the above litigation matter, and matters related to the U.S. Patents D737,723, D738,256, D784,195, and D785,112 ("the Patents-In-Suit"). This declaration is an addition to my previous declaration in support of Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc.'s (collectively, "Hangzhou") motion for a preliminary injunction. In this rebuttal declaration I may from time-to-time refer back to my previous declaration, the Expert Declaration of Paul Hatch Regarding Infringement, dated November 30, 2020 ("Hatch"). Hangzhou requested that I opine on the affidavit submitted by Mr. Zhang Yang in support of Defendant Runchenyun's Motion For Summary Judgement, dated July 12, 2021 ("the Zhang Affidavit") (attached as Exhibit 1).

I understand my task is to review materials and offer my opinion, perspective, and insights regarding this subject. I hold the opinions expressed in this declaration, but as my study of the case continues, I may acquire additional information that leads to new insights relevant to these opinions. With that in mind, I reserve the right to supplement this declaration further if and when such additional information becomes known to me. I may also provide supplemental and rebuttal declarations in response to arguments which may be proposed by the Defendants.

### A. Background and Qualifications

I incorporate by reference my background and qualifications as outlined in my previous declaration. *See* Hatch § I.B.

### B. Compensation and Prior Testimony

I am being compensated at a rate of $450 per hour to provide analysis and testimony in this proceeding. My compensation is not contingent on the outcome of any matter or the specifics of my testimony. I have no financial interest in the outcome of this matter.

### C. Materials and Information Considered

In forming my opinions, I have reviewed Runchenyun's Motion for Summary Judgment, the Zhang Affidavit, the Accused Product, the 'D857 patent, the claimed designs of the Patents-In-Suit; their file history; and the prior art cited on the face of the patents.

### D. Legal Standards

I incorporate by reference the discussion on Legal Framework previously provided in support of Plaintiffs' motion for preliminary injunction. *See* Hatch §§ II.A-F.

I am further informed that the Manual of Patent Examining Procedure ("MPEP") provides guidance on how broken lines are to be used in design patent drawings. U.S. Pat. & Trademark Office, Manual of Patent Examining Procedure § 1503.02 (9th ed. 2018). Section

1503.02.III notes that broken lines include "[s]tructure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated" and that structure "may be represented in the drawing by broken lines." *Id*. Such "[u]nclaimed subject matter must be described as forming no part of the claimed design or of a specified embodiment thereof."

I am also informed that " in analyzing infringement, the fact finder must compare the **claimed portion** of the design—i.e., whatever is shown in solid lines in the patent drawings—to the corresponding portion of the accused design." (emphasis added) Burstein, The "Article of Manufacture" in 1887, *supra* n. 12, at 11 (first citing *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 1:11-cv-07211, 2012 WL 3031150, at *9–10 (S.D.N.Y. July 24, 2012); and then citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008).

### III. THE ZHANG AFFIDAVIT IS BASED ON A FLAWED ANALYSIS, PROCESS AND EVIDENCE

#### A. The Zhang Affidavit Fails to Disclose Information Typically Associated With A Qualified Expert Opinion Witness For U.S. Design Patents

I am informed that witnesses are qualified as experts "by knowledge, skill, experience, training, or education" and can provide opinion testimony under Rule 702, if the witness "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The expert report must contain "the witness's qualifications, including a list of all publications authored in the previous 10 years"; "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition"; and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Given these standards, based on my experience as a design patent expert, Mr. Zhang provided insufficient information under Fed. R. Civ. P. 26(a)(2)(B).

To begin, the Zhang Affidavit fails to include Mr. Zhang's credentials as an expert witness, and it is unknown whether he has the relevant knowledge, skill, experience, training, or education relevant in this matter. Specifically, Mr. Zhang's experience with design patents in the U.S. is unknown, as is his understanding of U.S. design patent law, claim construction and infringement. There is also no information regarding his prior experience in providing opinions on legal matters in the US involving design patents.

The Zhang Affidavit also fails to disclose Mr. Zhang's compensation for his opinions and whether he may be financially tied to the outcome of the litigation.

In my experience, these omissions may undermine the opinions provided in the Zhang Affidavit. Additional flaws in analysis and reporting procedure in the Zhang Affidavit may further compromise his position as a credible expert witness.

### B. The Zhang Affidavit's analysis of the 'D857 patent is irrelevant to the infringement analysis

I understand that the correct comparison for infringement is between the Accused Products and the Patents-In-Suit, where, if the two are plainly dissimilar, the expert looks to the prior art through the eyes of the ordinary observer to determine infringement. It is possibly misleading and erroneous in this endeavor to compare the Patents-In-Suit to a *separate patent*, especially one that has a priority well after the Patents-In-Suit. Initially, I understand that the 'D857 patent is unrelated to the Patents-In-Suit. For example, the 'D857 patent differs from the Patents-In-Suit by assignee, inventorship, priority date, and patent family, among other things.



It is further worth noting that the 'D857 Patent includes only solid lines and therefore, unlike the Patents-in-suit, specify a very narrow claim.

### C. The Zhang Affidavit Fails To Properly Construe The Scope Of The Patents-In-Suit

The Zhang Affidavit does not provide an express claim construction of the Patents-In-Suit, as would be needed to reliably apply the principles and methods to the facts of the case, under the controlling precedent.

I understand that the Federal Circuit has cautioned against a detailed, verbal construction of the features in the patent drawings. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc). This is because a written claim construction focused on isolated features may lead the factfinder away from "consideration of the design as a whole." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). While the claimed design of a design patent is better represented by an illustration, it is helpful to the finder of fact to be provided with guidance on the overall impression of the claimed design on the ordinary observer. To construe the scope of a design patent, I understand that one must also consider the prosecution history of the patent application. See *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998) and Hatch § II.B.

6

Importantly, Mr. Zhang neither reviews the prosecution history of the Patents-In-Suit nor any prior art, both of which are essential for construing the claims and establishing the scope of the claimed designs of the Patents-In-Suit. Without this required foundation his opinions may seem conclusory and baseless.

D. **The Zhang Affidavit Fails to Define Ordinary Observer**

As I understand, "[t]he measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design[.]" *Goodyear Tire*, 162 F.3d at 1117. Accordingly, I understand that the hypothetical ordinary observer must be identified before applying the ordinary observer test by focusing on the "actual product that is presented for purchase, and the ordinary purchaser of that product." *Id*.

Further, I understand that some courts have held that the ordinary observer is one who is "not an expert in the claimed designs", but rather "one of ordinary acuteness who is a principal purchaser []" of the product. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015) (internal quotations and citation omitted).

Runchenyun asserts that "the ordinary observer is an individual who is familiar with hoverboards and their different designs." Dkt. 110 at 5. I disagree. Based on my prior experience as an Industrial Designer of consumer products, it is my opinion that an ordinary observer in this case is a consumer typically buying a hoverboard for the first time. The ordinary observer typically encounters products like the claimed designs of the Patent-In-Suit online, and I understand the Accused Products are only retailed specifically at Amazon.com. Based on the context of purchase, and the untrained eye of the purchaser, it is my opinion that the ordinary observer would possess "ordinary acuteness" and would apply a *relatively low level of attention*

7

to the aesthetics of the product. Thus, small visual details (e.g., such as the air vent pattern on the underside or the specific shape of the shallow grooves on the foot pads) would not affect their overall impression of the object as a whole.

Although my analysis, evidence, and reasoning for this conclusion is detailed in my previous declaration, Runchenyun fails to provide any corresponding arguments against my infringement opinions (Dkt. 110 §§ I-II), thereby likely undermining his opinions and those of the defendant.

## IV. DEFENDANT RUNCHENYUN'S ASSERTIONS NOT SUPPORTED BY THE ZHANG AFFIDAVIT

### A. Discussion and Comparison of The 'D857 Patent In The Motion Is Flawed

Runchenyun's motion is flawed in many ways, especially on the discussions of the 'D857 patent. Dkt. 110 at 3-4. Runchenyun asserts that the 'D857 patent must be valid against the Patents-in-Suit because the USPTO examiner cited the Patents-in-Suit as references. *Id*. Therefore, an accused product that is designed and manufactured based on the 'D857 patent must also not infringe the Patents-in-Suit. *Id*.

This logic is flawed. First, there is no factual support that the accused product is the commercial embodiment of the 'D857 patent. Second, there exist deviations in the Accused Product from the 'D857 patent that may bring it visually closer towards other prior art. Indeed, the Accused Product deviates from the 'D857 patent in numerous substantial ways and it cannot be assumed without analysis in light of the prior art that what is true for the Patents-In-Suit applies directly to the Accused Product. The use of the 'D857 patent in the comparison between Accused Products and the Patents-In-Suit is erroneous and misleading.

B.  **B. Runchenyun Incorrectly Relies Upon Small, Isolated Differences in Specific Views and Not the Overall Impression**

I understand that in the analysis of infringement one must compare the overall impression of the Accused Product to the overall impression of the claimed designs of the Patents-In-Suit. Even if various ornamental elements which make up the whole of a design may be slightly different in isolation, *infringement occurs if the overall visual impression is substantially similar*. However, Mr. Zhang and Runchenyun fail to provide any observations on the overall impression of either the claimed designs or the Accused Product, and his analysis only constitutes of a comparison of isolated features of the claimed design and Accused Products. His analysis erroneously relies upon small differences in specific views and not upon the overall impression *of the object as a whole*.

For example, Runchenyun asserts that that the "most prominent ornamental features from the Top View are the curved lines on the two standing pads." Dkt. 110 at 6. Mr. Zhang merely drew a box on a top view of the 'D857 patent without describing what he would like to express. As such, Runchenyun's assertion is not supported by the Zhang Affidavit. In fact, nowhere in the Zhang Affidavit does he actually describe the overall impression of the object as a whole.

Moreover, the 'curved lines' Runchenyun refers to in the assertion are shallow grooves within the standing pad, an area that is *unclaimed* in two of the Patents-In-Suit and therefore there is no pattern of grooves that would be able to evident non-infringement. Indeed, Mr. Zhang does not mention the overall shape of the standing pad and its similarity to the Patents-In-Suit, nor the hourglass shape of the product as a whole, but focused solely on this selection of decorative grooves.



For illustration purposes only, the above diagrams provide a partial Fig 1 from the 'D112 Patent on the left showing broken lines, and shown (right) with hypothetical differing groove pattern.

A similar example is where Runchenyun asserts that the "most prominent ornamental features" are the small vent hole pattern and linear ridges on the underside. Dkt. 110 at 7. Again, the Zhang Affidavit fails to support this assertion. Similar to above, the 'D112 also depicts a broken line vent pattern in the same area, therefore the pattern depicted on the Accused Product does not negate infringement. It is also my opinion that these features of the Accused Product are insignificant to the overall impression, especially to the ordinary observer when viewing the product as a whole.

Runchenyun also asserts that "a unique pentamerous design of the wheels. Five irregular hexagons are evenly distributed" on the wheel. Dkt. 110 at 8. Similar to the previous examples, a decorative pattern on the wheels would not suffice as evidence of non-infringement, as this area is not part of the claimed design of any of the Patents-In-Suit.

The Zhang Declaration also opines that the size of the fenders of the Accused differs from those of the Patents-in-Suit, and that the "sharp edges" would be distinctive from the

10

smooth curves of the Patents-in-Suit. Again, Runchenyun incorrectly focuses only on isolated differences in selected views and does not assess the effect on the over impression of the object as a whole. In the eyes of the ordinary observer, applying the low level of attention to visual details one would, the alleged "hard edges" and size difference is not immediately apparent when viewing the product as a whole.



While these minor differences to the Patents-in-suit are visible when comparing directly, they do not have a significant effect on the overall impression of the product as a whole to the ordinary observer.

In my previous infringement analysis, I provided images of both the Patents-In-Suit and the Accused product and described the overall impression of the Accused Product as a whole, through the eyes of an ordinary observer. (Hatch § IV). In my analysis I concluded that the Accused Product is not plainly dissimilar to the Patents-In-Suit and is substantially the same as the claimed designs of the Patents-In-Suit in the eyes of the ordinary observer. As an additional step, I also analyzed the cited prior art against the Accused Product and Patents-in-Suit and found that the Accused Product is closer to the Patents-In-Suit than the prior art.

## V. CONCLUSION

Based upon my analysis described above, it is my opinion that:

- The Zhang Affidavit fails to disclose information typically associated with a qualified expert opinion witness for U.S. Design Patents.

- The Zhang Affidavit's analysis of the 'D857 patent is irrelevant to the infringement.

- The Zhang Affidavit fails to construe the scope of the Patents-In-Suit.

- The Zhang Affidavit incorrectly relies upon small, isolated differences in specific views and not the overall impression.

- The Zhang Affidavit erroneously relies upon the wrong ordinary observer.

- The overall appearance of the Accused Product is substantially the same as the overall appearance of one or more of the Claimed Designs through the eyes of the ordinary observer in light of the prior art.

## VI. RESERVATION OF RIGHTS

My current opinions are set forth in this declaration. However, my analysis is continuing, and I thus reserve the right to supplement or amend my declaration and to rely on additional documents, prior art, or discovery or testimony that may come to my attention.

Moreover, I may make additions, deletions, or modifications to this declaration and my opinions in the future that would be reflected in my testimony at the trial and/or additional declarations that I may be asked to submit in this case. I also reserve the right to rely on all other expert declarations submitted in this case. For the forthcoming trial, I may prepare diagrams, charts, other demonstratives, and/or demonstrations that illustrate the issues presented. I reserve the right to respond to additional arguments or analyses proffered by expert witnesses and/or the Plaintiff, and I understand that I may be asked to give rebuttal testimony on matters not covered in this expert declaration.

I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Dated: August 12, 2021                                                  Respectfully Submitted,

_____

Paul Hatch