**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISON**

| | |
|---|---|
| Hangzhou Chic Intelligent Technology Co., Ltd. et al,<br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>*Defendants*. | **CASE NO.** 1:20-cv-05905<br><br>**Judge:** Honorable Thomas M. Durkin |

# EXPERT DECLARATION OF JIM GANDY

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. QUALIFICATIONS .......... 3

III. MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES .......... 4

IV. ANALYSIS OF THE ‘723, ‘256, ‘195, ‘112 PATENTS, THE ACCUSED PRODUCT AND THE PRIOR ART . 5

A. The ‘723 Patent, Prior Art ‘906 Patent and “The Accused Product” .......... 6

B. The ‘256 Patent, Prior Art ‘906 Patent and “The Accused Product” .......... 12

C. The ‘195 Patent, Prior Art ‘906 Patent and “The Accused Product” .......... 18

D. The '112 Patent, Prior Art '906 Patent and "The Accused Product" .......... 23

V. CONCLUSION .......... 29

**DECLARATION OF JIM GANDY AS TO NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENTS**

I, Jim Gandy, submit this declaration in support of Defendant Runchengyun, a.k.a. Anhui Runchengyun Network Technology Co., Ltd, (Runchengyun) declaratory relief of noninfringement. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, belief, recollection, and understanding. All statements made on information and belief are believed to be true. I am over the age of eighteen, and, if asked to do so, I could competently testify to the matters set forth herein.

## I. INTRODUCTION

1. I have been retained by counsel as an independent expert witness to provide my opinion regarding the above-captioned proceeding. Based on my education and my experience in transportation design, I have been asked to render an opinion regarding alleged infringement of the sole claim of design patents D737,723, ("the '723 patent"), D738,256, ("the '256 patent"), D784,195, ("the '195 patent") and D785,112, ("the '112 patent").

2. As discussed in further detail in this Declaration and any supplemental reports, testimony, or declarations that I may provide, it is my opinion that the Defendant's hoverboard design product ASIN No. B07SKNY527, ("The Accused Product") does not infringe the '723, '256, '195 and '112 patents.

3. The following is my report and it and the exhibits hereto contain my opinions and the support therefore. In connection with rendering my opinion I have reviewed and relied upon the following materials:

- U.S. Design Patent No. D737,723 ("the '723 Patent")
- File History for U.S. Design Patent No. D737,723 Patent;
- U.S. Design Patent No. D738,256 ("the '256 Patent")
- File History for U.S. Design Patent No. D738,256 Patent;
- U.S. Design Patent No. D784,195 ("the '195 Patent")
- File History for U.S. Design Patent No. D784,195 Patent;
- U.S. Design Patent No. D785,112 ("the '112 Patent")
- File History for U.S. Design Patent No. D785,112 Patent;

- Defendant's hoverboard product ASIN No. B07SKNY527, ("The Accused Product")
- U.S. Design Patent No. D808,857 ("the '857 Patent")
- File History for U.S. Design Patent No. D808,857 Patent;
- U.S. Design Patent No. D739,906 ("the '906 Patent")
- U.S. Utility Patent No. 8,738,287 ("the '287 Patent")
- EXPERT DECLARATION OF PAUL HATCH REGARDING INFRINGEMENT OF U.S. PATENTS D737,723, D738,256, D784,195, and D785,112;
- DEFENDANT GYROOR-US'S MOTION FOR SUMMARY JUDGEMENT FOR DECLARATORY RELIEF OF NONINFRINGEMENT;
- PLAINTIFFS' OPPOSITION TO DEFENDANT GYROOR-US'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
- REBUTTAL EXPERT DECLARATION OF PAUL HATCH;
- DEFENDANT'S FINAL NONINFRINGEMENT CONTENTIONS; and
- DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

4. In addition to the above materials, I have also relied on my own education, training, experience and knowledge in the field of transportation and design patents.

5. I may also consider additional documents and information that have not yet been provided to or discovered by me should such documents and information be brought to my attention after the date I submit this Declaration, and I reserve the right to add to or amend my opinions in connection with the same.

6. The analysis in this Declaration is exemplary. Additional reasons may support my conclusions, but they do not form my current analysis. The fact that I do not address a particular reason does not imply that I would agree or disagree with such additional reason.

7. I receive compensation at a rate of $350 per hour for my time spent on this matter, except for any travel time, which is billed at one-half of my hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work on this matter. I have no financial interests in the patents involved in this proceeding, and my compensation is not dependent on the outcome of this proceeding. The conclusions I present are based on my own judgment. I am not an employee of Runchengyun, Glacier Law PLLC, or any affiliated companies.

## II. QUALIFICATIONS

8. My current curriculum vitae is attached as Exhibit 1.

9. I hold a Bachelor of Science in Architectural Design Technology from Temple University in Philadelphia, Pennsylvania, where I graduated in 1972.

10. Upon graduation, I worked as a Design Patent Examiner in Art Unit 2911 for the United States Patent and Trademark Office ("USPTO"). While in Art Unit 2911, I primarily worked in class D12 "Transportation." My responsibilities included examining design patent applications, examining reexamination and reissue applications, issuing determinations on examined applications, initiating interference proceedings, and preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences.

11. In 1979, I was promoted to Primary Examiner and continued to work as a Design Patent Examiner in Art Unit 2911 for the USPTO. With this promotion, I gained full signatory authority and trained new examiners while occasionally fulfilling supervisory patent examiner duties when the art unit supervisor was absent.

12. In my 24 years of work as a Design Patent Examiner at the USPTO, I made patentability determinations in approximately 10,000 design patent applications that I examined. I have examined design patent applications in every design class, and approximately three-quarters of my examinations related to Class D12 (Land Transportation).

13. In 1996, I became a Supervisory Patent Examiner for the USPTO and transitioned to Art Unit 2913, which also reviews designs for Transportation among other classes of art. As supervisor, I managed the work flow, quality, and timeliness of examiners in my art unit. I also trained junior examiners and provided additional training to primary examiners to maintain consistency in work product. I evaluated the performance of all examiners in the art unit. Finally, I also developed the Design Examiner Supplemental Training Guide and led the program for uniformity of examination practice for the entire Design Patent Technology Center.

14. In 1998, I became the Design Patent Practice Specialist for Technology Center 2900 at the USPTO. I continued to train all new examiners, junior examiners when they joined the USPTO and trained all examiners at Technology Center 2900 through continuing education programs. I was in charge of updating the Design Examiner Supplemental Training Guide and Chapter 1500 Design Patents in the Manual of Patent Examining Procedure. I responded to inquiries from external customers about design patent practice and procedure on a daily basis. I

continuously reviewed cases, decisions, and reports coming from the courts, the Board, and the Office of Patent Quality Review to train examiners and update the previously mentioned documents. Finally, I also made presentations to attorneys and inventor groups on behalf of the USPTO.

15. During my career at the USPTO, I received an outstanding rating under performance appraisal plan for 32 consecutive years. I also received various accolades including the Department of Commerce Bronze Medal Award in 1983; the USPTO's Distinguished Career Award in 2000 in recognition of consistent superior performance in design patent application examination and in art unit leadership; and the Norman P. Morgenstern Award in 2004 for the leadership and innovation contributions made by Supervisory Patent Examiners.

16. Currently, and since my retirement from the USPTO in 2005, I have occasionally counseled patent attorneys and agents who file design patents applications.

17. In the past I have served as in expert in other design patent related matters, a detailed list of cases in which I have served as a design patent expert is set forth in my curriculum vitae which is attached as Exhibit 1.

## III. MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES

18. As a design patent expert, I am not an attorney and, therefore, nothing in this report should be construed as me offering any legal opinions. Rather, I am offering design assessments and opinions. In rendering my analysis, I have been informed by counsel for Runchengyun the legal standards for infringement of a design patent. I have applied those standards in forming the opinions expressed in this report.

19. Based on my conversations with counsel for Runchengyun and my review of administrative decisions and articles discussing design patent law principals, I have the following understanding of design patent infringement. First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Further, it is my understanding that design patent infringement is determined by first construing the claim to the design and then comparing it to the design of the accused device. It's also my understanding that in construing the claim a design is better represented by an illustration rather than a verbal description since any description would not likely be intelligible without the illustration.

Therefore, it is my opinion that the claim of the Patents-in-Suit should be construed based on the drawings.

20. I have further been informed by counsel for Runchengyun that the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. It's my understanding that under the "ordinary observer" test for infringement of a patented design an accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into purchasing one, supposing it to be the other. Moreover, it's my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary. In this instance, an "ordinary observer" is a potential purchaser who is familiar with hoverboards and their different designs.

## IV. ANALYSIS OF THE '723, '256, '195, '112 PATENTS, THE ACCUSED PRODUCT AND THE PRIOR ART

21. In order to assess whether the design of "The Accused Product" appropriates the claimed design of the '723, '256, '195, and '112 patents, it is appropriate to identify the features of each and then compare them with each other and the prior art. In doing so, I understand that the broken lines shown in the drawing views of the '723, '256, '195 and '112 patents are directed to unclaimed portions of the Hoverboards and form no part of the claimed design in each of those patents. Therefore, those broken lines will not be considered in assessing the features of the claimed design in the four aforementioned patents. Also, the design of "The Accused Product" and the claimed design of the four patents referenced above will be compared to the features of the '906 patent which I consider to be the closest prior art to them. It's noted that the '906 patent was issued after the '723 and '256 patents; however the '906 patent was filed with the United States Patent and Trademark Office more than a year before the filing date of those patents and it's my understanding it can be considered prior art for the purpose of this infringement analysis. In support of this position I have also reviewed the '278 utility patent which names the same inventor, Shane Chen, as the '906 design patent and was filed a month earlier than the '906 design patent and issued before the filing dates of the '723, '256, '195 and '112 patents and more than a year before the issue date of those patents. Figure 1 of the '278 utility patent discloses a hoverboard having an appearance basically the same as the design in the '906 patent, and Figure 2 shows the hour glass

peripheral shape of the hoverboard shown in Figure 1 and the design shown in the ‘906 patent. It’s further my understanding that as prior art the ‘906 patent can be relied upon for everything it discloses in the drawing, including the broken line depiction of wheel covers on each end of the design. With that said, below is a side-by-side visual comparison of the claimed design of the ‘723, ‘256, ‘195 and ‘112 patents and the prior art ‘906 patent and the design of “The Accused Product”.

### A. The ‘723 Patent, Prior Art ‘906 Patent and “The Accused Product”

Top plan view ‘723 patent



Top plan view prior art ‘906 patent



Top plan view “The Accused Product”



22. In view of the above visual depictions of the claimed design of the ‘723 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” it’s clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art ‘906 patent appears to be closer to the claimed design of the ‘723 patent than the design of “The Accused Product”. Furthermore, the claimed design of the ‘723 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art ‘906 patent are, in my opinion, closer to the claimed design of the ‘723 patent than the design of “The Accused Product”. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the ‘723 patent and the design of the prior art ‘906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of “The Accused Product” is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Rear view ‘723 patent



Front view ‘723 patent



Front and Rear view prior art ‘906 patent



Front and Rear view “The Accused Product”




23. Furthermore, it’s noted that the wheel covers at each end of the claimed design of the ‘723 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it’s my opinion that the shape and appearance of

the wheel covers in the claimed design of the ‘723 patent are closer to the wheel covers shown in broken lines in the design of the prior art ‘906 patent than the wheel covers of the design of “The Accused Product”. Specifically, the wheel covers shown on the claimed design of the ‘723 patent and the design of the prior art ‘906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of “The Accused Product” are pentagonal in shape and do not extend over the entire wheel, but rather partially over the wheel.

Side view ‘723 patent



Side view prior art ‘906 patent



Side view “The Accused Product”



Perspective view ‘723 patent



Perspective view prior art ‘906 patent



Perspective view ‘The Accused Product”



24. The only common feature on the top surface of the claimed design of the ‘723 patent and the design of “The Accused Product” not shown on the design of prior art ‘906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged partial top view below that the foot pads of the claimed design of the ‘723 patent and the design of “The Accused Product” differ not only in their peripheral shape but also the decorative pattern of ribs on each. In addition, as shown in the enlarged partial top view below the concavely curved recessed center portion of the claimed design of the ‘723 patent has opposing semicircular shaped features not shown in the “The Accused Product”, whereas the concavely curved recessed center portion of “The Accused Product” has a checkered like surface pattern not shown in the claimed design of the ‘723 patent or the design of prior art ‘906 patent.

Enlarged partial top view ‘723 patent



Enlarged partial top view “The Accused Product”



25. The front and rear surfaces of the claimed design of the ‘723 patent and the design of prior art ‘906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the ‘723 patent and the lines on the front and rear surface of the claimed design of the ‘723 patent. On the contrary, while the design of “The Accused Product” has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the ‘723 patent and the design of prior art ‘906 patent, the central portion of the front and rear surfaces of the design of “The Accused Product” differs significantly from the claimed design of the ‘723 patent and the design of prior art ‘906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion. The checkered like surface pattern shown on the concavely curved recessed central portion in the enlarged partial top view above continues down and along the outwardly protruding horizontal band as depicted in the enlarged partial front and rear view of “The Accused Product” below. Also, on the right front vertically flat upper portion of the design of “The Accused Product” is the word “GYROOR”.

Enlarged partial front and rear view “The Accused Product”




26. The shape and appearance of the bottom surface of the claimed design of the ‘723 patent and the design of prior art ‘906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the ‘723 patent and the design of prior art ‘906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of “The Accused Product” differs from both the claimed design of the ‘723 patent

and the design of prior art ‘906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. In addition, the recessed central portion of the design of “The Accused Product” is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal grooves as best illustrated in the enlarged partial bottom view below.

Bottom view ‘723 patent



Bottom view prior art ‘906 patent



Bottom view “The Accused Product”



Enlarged partial bottom view “The Accused Product”



27. In view of the above analysis of the claimed design of the ‘723 patent with the design of “The Accused Product” and the design of the prior art ‘906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the ‘723 patent

are closer to the design of the prior art ‘906 patent than the design of “The Accused Product”. Furthermore, it’s my opinion that the shape and appearance of the few features identified that are common to the claimed design of the ’723 patent and the design of “The Accused Product” not found in the design of the prior art ‘906 are substantial different such that an “ordinary observer”, familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it’s my opinion that the design of “The Accused Product” does not infringe the claimed design of the ‘723 patent.

**B. The ‘256 Patent, Prior Art ‘906 Patent and “The Accused Product”**

Top plan view’256 patent



Top plan view prior art ‘906 patent



Top plan view “The Accused Product”



28. In view of the above visual depictions of the claimed design of the ‘’256 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” it’s clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art ‘906 patent appears to be closer to the claimed design of the ‘256 patent than the design of “The Accused Product”. Furthermore, the claimed design of the ‘256 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art ‘906 patent are, in my opinion, closer to the claimed design of the ‘256 patent than the design of “The Accused Product”. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the ‘256 patent and the design of the prior art ‘906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of “The Accused Product” is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view ‘256 patent



Rear view ‘256 patent



Front and Rear view prior art ‘906 patent



Front and Rear view “The Accused Product”




29. Furthermore, it’s noted that the wheel covers at each end of the claimed design of the ‘256 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it’s noted that the shape of the wheel covers in

the claimed design of the ‘256 patent and the prior art ‘906 patent are semi-circular, while the wheel covers on the design of “The Accused Product” are pentagonal in shape. It’s also noted that the wheel covers on the claimed design of the ‘256 patent and the design of “The Accused Product” do not extend over the entire wheel, but rather partially over the wheel.

Side view ‘256 patent



Side view prior art ‘906 patent



Side view “The Accused Product”



Perspective view ‘256 patent



Perspective view prior art ‘906 patent



Perspective view ‘The Accused Product”



30. The only common feature on the top surface of the claimed design of the '256 patent and the design of "The Accused Product" not shown on the design of prior art '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged partial top view below that the foot pads of the claimed design of the '256 patent and the design of "The Accused Product" differ not only in their peripheral shape but also the decorative pattern of ribs on each. In addition, as shown in the enlarged partial top view below the concavely curved recessed center portion of the claimed design of the '256 patent has a bisected bone shaped feature not shown in the "The Accused Product", whereas the concavely curved recessed center portion of "The Accused Product" has a checkered like surface pattern not shown in the claimed design of the '256 patent or the design of prior art '906 patent.

Enlarged partial top view '256 patent



Enlarged partial top view "The Accused Product"



31. The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of "The Accused Product" has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of "The Accused Product differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion. The checkered like surface pattern shown on the concavely curved recessed central portion in the enlarged partial top view above continues down and along the outwardly protruding horizontal band as depicted in the enlarged partial front and rear view of "The Accused Product" below. Also, on the right front vertically flat upper portion of the design of "The Accused Product" is the word "GYROOR".

Enlarged partial front and rear view "The Accused Product"




32. The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface

of the design of "The Accused Product" differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. In addition, the recessed central portion of the design of "The Accused Product" is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal grooves as best illustrated in the enlarged partial bottom view below.

Bottom view '256 patent



Bottom view prior art '906 patent



Bottom view "The Accused Product"



Enlarged partial bottom view "The Accused Product"



33. In view of the above analysis of the claimed design of the ‘256 patent with the design of “The Accused Product” and the design of the prior art ‘906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the ‘256 patent are closer to the design of the prior art ‘906 patent than the design of “The Accused Product”. Furthermore, it’s my opinion that the shape and appearance of the few features identified that are common to the claimed design of the ’256 patent and the design of “The Accused Product” not found in the design of the prior art ‘906 are substantial different such that an “ordinary observer”, familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it’s my opinion that the design of “The Accused Product” does not infringe the claimed design of the ‘256 patent.

**C. The ‘195 Patent, Prior Art ‘906 Patent and “The Accused Product”**

Top plan view’195 patent



Top plan view prior art ’906 patent



Top plan view “The Accused Product”



34. In view of the above visual depictions of the claimed design of the ‘195 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” it’s clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art ‘906 patent appears to be closer to the claimed design of the ‘195 patent than the design of “The Accused Product”. Furthermore, the claimed design of the ‘195 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of most of the surfaces and features of the claimed design of the ‘195 patent, the design of the prior art ‘906 patent and the design of “The Accused Product differ significantly from each other. However, there are some surfaces and features of the design of the prior art ‘906 patent that are closer in shape and appearance to the claimed design of the ‘195 patent than the design of “The Accused Product”. For instance as shown in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the ‘195 patent and the design of the prior art ‘906 patent protrude upwardly from the opposing outer foot surfaces, while the concavely curved recessed center portion of the top surface of the design of “The Accused Product” is substantially flat and slightly recessed down below the opposing outer foot surfaces. Also, as illustrated in the enlarged partial top view below,

Front view ‘195 patent



Rear view of ‘195 patent



Front and Rear view prior art ‘906 patent



Front and Rear view “The Accused Product”



the concavely curved recessed center portion of "The Accused Product" has a checkered like surface pattern not shown in the claimed design of the '195 patent or the design of the prior art '906 patent.

Enlarged partial top view "The Accused Product"



35. Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of "The Accused Product" differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of "The Accused Product". Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of "The Accused Product" are pentagonal in shape and do not extend over the entire wheel, but rather partially over the wheel.

Side view '195 patent



Side view prior art '906 patent



Side view "The Accused Product"



Perspective view ‘195 patent



Perspective view prior art ‘906 patent



Perspective view “The Accused Product”



36. The front and rear surfaces of the claimed design of the ‘195 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the ‘195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. The front and rear surfaces of the design of the’906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. The front and rear surfaces of the design of “The Accused Product” have a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as well as a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion directly

below the LED lights. The checkered like surface pattern shown on the concavely curved recessed central portion in the enlarged partial top view above continues down and along the outwardly protruding horizontal band as depicted in the enlarged partial front and rear view of "The Accused Product" below. Also, on the right front vertically flat upper portion of the design of "The Accused Product" is the word "GYROOR".

Enlarged partial front and rear view "The Accused Product"




37. The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of "The Accused Product" differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. In addition, the recessed central portion of the design of "The Accused Product" is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal grooves as best illustrated in the enlarged partial bottom view below.

Bottom view '195 patent



Bottom view prior art '906 patent



Bottom view "The Accused Product"



Enlarged partial bottom view "The Accused Product"



38. In view of the above analysis of the claimed design of the '195 patent with the design of "The Accused Product" and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of "The Accused Product". It's further my opinion that the shape and appearance of the surfaces and features of the design of "The Accused Product" are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of "The Accused Product" does not infringe the claimed design of the '195 patent.

### D. The '112 Patent, Prior Art '906 Patent and "The Accused Product"

Top plan view '112 patent



Top plan view prior art '906 patent



Top plan view "The Accused Product"



39. In view of the above visual depictions of the claimed design of the ‘112 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” it’s clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art ‘906 patent appears to be closer to the claimed design of the ‘112 patent than the design of “The Accused Product”. Furthermore, the claimed design of the ‘112 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of some of the surfaces and features of the claimed design of the ‘112 patent, the design of the prior art ‘906 patent and the design of “The Accused Product differ significantly from each other. However, there are some surfaces and features of the design of the prior art ‘906 patent that are closer in shape and appearance to the claimed design of the ‘112 patent than the design of “The Accused Product”. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the ‘112 patent and the design of the prior art ‘906 patent both have a slightly raised convex contour, while the concavely curved recessed center portion of the top surface of the design of “The Accused Product” is substantially flat and slightly recessed down below the opposing outer foot surfaces. Also, as illustrated in the enlarged partial top view below, the concavely curved recessed center portion of “The Accused Product” has a checkered like surface pattern not shown in the claimed design of the ‘112 patent or the design of the prior art ‘906 patent.

Front view ‘112 patent



Rear view ‘112 patent



Front and Rear view prior art ‘906 patent



Front and Rear view “The Accused Product”



Enlarged partial top view "The Accused Product"



40. Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of "The Accused Product" differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of "The Accused Product". Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of "The Accused Product" are pentagonal in shape and do not extend over the entire wheel, but rather partially over the wheel.

Side view '112 patent



Side view prior art '906 patent



Side view "The Accused Product"



Perspective view ‘112 patent



Perspective view prior art ‘906 patent



Perspective view “The Accused Product



41. The front and rear surfaces of the claimed design of the ‘112 patent, the design of the prior art ‘906 patent and the design of “The Accused Product” are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the ‘112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. The front and rear surfaces of the design of the’906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. The front and rear surfaces of the design of “The Accused Product” have a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as well as a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion directly below the LED lights. The checkered like surface pattern shown on the concavely curved recessed central portion in the enlarged partial top view above continues down and along the outwardly protruding horizontal band as depicted in the enlarged partial front and

rear view of “The Accused Product” below. Also, on the right front vertically flat upper portion of the design of “The Accused Product” is the word “GYROOR”.

Enlarged partial front and rear view “The Accused Product”




42. The shape and appearance of the bottom surface of the claimed design of the ‘112 patent and the design of prior art ‘906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the ‘112 patent have a slight upward curvature while the design of the prior art ‘906 patent has opposing flat, plain outer portions. However, both the claimed design of the ‘112 patent and the design of the prior art ‘906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of “The Accused Product” differs from both the claimed design of the ‘112 patent and the design of prior art ‘906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. In addition, the recessed central portion of the design of “The Accused Product” is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal grooves as best illustrated in the enlarged partial bottom view below.

Bottom view ‘112 patent



Bottom view prior art ‘906 patent



Bottom view of “The Accused Product”



Enlarged partial bottom view "The Accused Product"



43. In view of the above analysis of the claimed design of the '112 patent with the design of "The Accused Product" and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '112 patent are closer to the design of the prior art '906 patent than the design of "The Accused Product". It's further my opinion that the shape and appearance of the surfaces and features of the design of "The Accused Product" are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of "The Accused Product" does not infringe the claimed design of the '112 patent.

## V. CONCLUSION

44. For the reasons stated herein it is my opinion that an ordinary observer, conversant with the prior art, would consider the design of "The Accused Product" ***dissimilar*** in overall appearance to the claimed design of the '723, '256, '195 and '112 patents such that an ordinary observer would ***not*** be deceived into purchasing one, supposing it to be the other. Hence, it's my opinion that the design of "The Accused Product does not infringe the claimed design of the '723, '256, '195 and '112 patents for the reasons stated above.

Dated: July 28, 2022

Jim Gandy